THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, *v.* AUGUSTUS CASSELL *et al.,* Appellees.

APPEAL FROM LASALLE.

A contract for wood "now delivered and being hauled and piled," "to be piled eight feet high, and delivered when called for," will be understood as identifying the wood, but not as then delivering it, so as to change the property and possession, without some further act.

The meaning of the contract must be gathered from itself; and is not to be explained by parol.

Juries find the fact that a contract was made; but the intent and obligations of it they find under the instructions of the court; and any mistake in such instructions is error.

Where a contract is for a certain quantity, it cannot be changed by any ulterior understandings of one of the parties.

THIS was an action of assumpsit brought by the appellees against appellant upon the common counts. The appellant pleaded, that it never promised as alleged, and payment. There was a trial by jury, and verdict and judgment for appellees for $226, before HOLLISTER, Judge, at November term, 1855, of the LaSalle Circuit Court. The appellees introduced Henry Cassell as a witness, who testified that he hauled two hundred and ninety-two cords of wood for them, and piled it on the bank of the Illinois river; did not measure the wood, but took the word of another man for the quantity; did not know what became of the wood. Saw a person about the wood on one occasion, whom he supposed to be an agent of appellant. They proved by another witness that he hauled two hundred and twenty-eight cords of wood for them, which was also piled on the bank of the river; witness did not know what became of the wood. Another witness proved the hauling of fifteen cords of wood to the same place, and that he saw there one Porter, who was the agent of appellant, and that Porter took away some of the wood. It was also proved that two other persons had hauled wood—one, eight cords, and another, twelve cords—to the same place. The appellees also read in evidence the following agreement, which was produced by appellant upon notice from appellees:

The Illinois Central Railroad Company *v.* Cassell et al.

Illinois Central Railroad, bought of Cassell & McClung, three hundred cords of wood, now delivered and being hauled and piled on the bank of the Illinois river, at $2 per cord. The above wood is to be piled eight feet high, and delivered to the company when called for.

Signed,                                          AUGUSTUS CASSELL,
                                                 W. McCLUNG.

The appellant then read in evidence receipts for money paid, for two hundred and eighty-six cords of wood, delivered on the Illinois river, at $2 per cord, $572, dated March 31, 1854, and for fifty-eight cords of wood delivered at same place at $3 the cord, $174, dated the 24th June, 1854.

The appellant proved by Porter, that he bought the wood mentioned in the agreement; that there was one hundred cords of wood on the bank of the river when he took the contract from appellees, upon which he advanced to appellees one dollar on the cord at the time he took the contract; which one hundred was included in the receipt taken for the $572; that he measured the wood in the spring and that there was then two hundred and sixty-eight cords in all; that he took this away in boats; that Cassell, one of the appellees, made no complaint that appellant had taken away more wood than was paid for, but that McClung sometime afterwards made some complaint, that ten or twelve cords more had been taken than was paid for; that the wood on the bank was only a part of it piled eight feet high. The appellant also proved by another witness, who took away sixty cords of the wood, that it was not piled eight feet high; that McClung admitted that he had been paid for the wood, except that he claimed there had been a mistake made in the measurement of about ten cords.

The plaintiffs below then asked the following instructions:

1st. If the jury believe from the evidence that the plaintiffs delivered wood to defendant on the bank of the Illinois river, then the defendant is liable to plaintiffs for the wood so delivered at the contract price; and the jury should render a verdict for whatever was not paid for.

2nd. If, at the time of the execution of the contract by the plaintiffs, the surrounding circumstances were that part of the wood was on the bank of the river, and the remainder yet at a distance, either uncut or cut, the construction of the contract is, that the wood then on the bank was to become the property of the railroad company when piled up eight feet high, or if then piled up, that it was then the property of the company, and the remainder was to be delivered on the bank of the river when called for and as fast as called for; and if, after a call for it, it was delivered on the bank of the river, it then became the property of the company. That is, if it was the understanding of

the parties that the plaintiffs were not to be paid before the wood was taken away from the bank of the river, but trusted the defendant to take it first and pay for it afterwards.

3rd.   If the wood was not to become the property of the railroad company until it was called for, after a delivery on the bank of the river, yet if, after it was placed upon the bank of the river, the company, by its agents, did call for it, and it was turned out on the bank and delivered on the bank to be taken away on boats by the company, upon this state of facts, and upon this construction of the contract, it would be the property of the company during the time between the time it was turned out and the time of the company coming with boats to get it, and if taken away between these times by others than the plaintiffs, or defendant, the loss would be that of the defendant.

Which instructions were given by the court; to the giving of each of which instructions the defendant excepted.

The defendant asked the following instructions, which were given by the court:

1st.   That under the contract in evidence in this case, the wood was to be delivered to the railroad company on the bank of the Illinois river when called for, and was at the risk of the plaintiffs until that time, if called for in a reasonable time.

2nd.   The contract in this case calls for only three hundred cords, and the railroad company was not bound under this contract to take more, nor was any amount over three hundred cords at the risk of the defendant at any time under this contract.

3rd.   The defendant in this cause is not bound to pay for any wood, except the amount which it contracted to buy of the plaintiffs, or the amount which was actually delivered to the defendant.

4th.   If wood was taken by any person claiming to act for the railroad company, which was not purchased or bargained for, and such wood was taken without the knowledge of plaintiffs, such taking would be a trespass and would not entitle the plaintiffs to recover in this suit, unless the wood was sold or traded off by the railroad company.

5th.   The railroad company is not bound to prove, in the first instance, that it did not take the wood piled on the bank; the plaintiffs must prove that defendant either did take the wood, or contract to take it.

6th.   The property in the wood was not changed so as to be at the risk of the railroad company, as long as anything remained to be done to determine the amount, such as measuring the wood.

7th.   The written contract in this case is to govern as to the time of delivery of the wood mentioned therein, and no understanding outside of the contract of the agent of the railroad com-

pany, or any body else at the time or before the signing of the contract, ought to be considered by the jury to vary the written contract.

To which the plaintiffs asked · the following qualifications, which were given by the court:

*Qualification to defendant's second instruction.*    If, however, it was the understanding of the parties that the wood over and above three hundred cords was to become the property of the railroad company when delivered on the bank of the river, then the wood over and above the three hundred  cords so delivered, was at the risk of the company after it was delivered on ·the bank of the river.

*Qualification of the above qualification.*    The jury ought not to presume that· there was any such understanding as is mentioned above, unless it is proven, and the burthen of proof is on the plaintiffs.

*Qualification to defendant's fifth instruction.*    The measurement could be made as well by plaintiffs as defendant.

*Qualification of the above.*    The railroad company was not bound to take the measurement of plaintiffs; and until it is proven that a measurement was made by some one, the wood was at the risk of plaintiffs, and if defendant measured the wood and plaintiffs did not object to the measurement when notified of it, this circumstance is to be considered by the jury in determining whether the measurement of defendant was not acquiesced in by plaintiffs.

If the wood was measured in the woods or while being hauled, that is sufficient on the question of measurement, if such measurement was correct.

To the giving of which qualifications and each of them, the defendant excepted.

GLOVER and COOK, for Appellant.

T. L. DICKEY, W. H. L. WALLACE, and E. S. LELAND, for Appellees.

SCATES, C. J.    The suit was not brought upon a written, or special verbal contract; but upon trial, the plaintiffs produced, upon notice of defendant, and defendant read in evidence, a written contract for three hundred cords of wood, at two dollars per cord.

All the instructions which have reference to a contract, a contract price, or to delivery of wood under and according to contract, must be understood as referring to this contract read in evidence ; for there was no proof in the case of any other.

It becomes important, therefore, to construe this as the contract, and ascertain the true intent, meaning, and obligation of the parties, before we can pass upon the correctness of the instructions, and the sufficiency of the evidence, under them, to sustain the verdict for $226.

Counsel on both sides have been at fault and the court can throw no light upon the manner of making that sum from the evidence. If teamsters' *estimates,* (for there were but sixty cords sworn to have been measured by any of them,) are supposed to be unreliable, upon what basis can we stop short of a reduction down to the sworn measurements delivered and paid for?

We understand the contract phraseology, "now delivered and being hauled and piled on the bank of the Illinois River," as identifying the particular wood contracted for, which, with one hundred dollars paid at the time, as earnest money, to bind the bargain, might give plaintiffs a lien, a prior claim, and superior right to other purchasers or incumbrancers.

But we do not perceive the intent of the parties, from this language, to treat the delivery of the wood there as a delivery in the sense of changing the property, by change of possession, risk and complete ownership—as by actual delivery. This sense and meaning is inconsistent with, and wholly excluded by, the very next stipulation of the contract: "The above wood is to be piled eight feet high, and *delivered* to said company when called for." This delivery was unquestionably used in the sense of a change of possession, and complete ownership. The former in the sense of identifying and including, as within the contract, that already brought and delivered upon the bank, *that* so *being* brought and delivered, and as much more as would fill the amount. Any other construction would involve the contradiction of two deliveries in the sense of a change of possession and ownership. If the first delivery mentioned in the contract was used in this sense, many modes of expression would have secured the object of the following clause, without involving the apparent and obvious sense of a final change of possession and ownership. Such as, "The wood shall be piled eight feet high." "The wood so delivered shall be piled," &c. The first delivery used could not have been complete, because an additional act—"piled eight feet high"—was to be done; yet in stipulating for this act of preparation of the wood for measurement and security, the plaintiffs also stipulated for a delivery when "called for," which must have reference to the whole contract for 300 cords "delivered and being hauled and piled on the bank." The intention and true meaning of the parties to this contract, must be gathered from the contract itself, like all other written contracts, and cannot be altered, changed, modified or explained

by parol, unless an ambiguity brings it within the exception to the general rule on that subject. Nothing so appears. Juries exclusively find upon the fact of making of contracts, and when so found written, they find the true intent and obligations, under the instruction of the court. Any material mistake in an instruction, in the true intent and obligations imported by the language used, is error, and subject to correction.

In examining instructions, courts should not indulge in critical astuteness, to find error. We must, therefore, understand the court, in the first instruction, as referring to a final delivery, and not a deposit, in the sense of the contract and under it. If the jury wrested the sense, the fault is in the verdict, not the instruction.

The second is clearly wrong, and it shows that the defendants, in drawing it, discovered a difficulty into which it led them, and from which they sought to escape by " the understanding of the parties," supposed to exist. When no time of payment, on sale and delivery of personal property, is fixed, the law fixes the time of delivery as that of the payment. The parties being silent here, there could, under this contract, be no " understanding " about taking away the wood on trust, without payment. The vendors had the right to make a complete delivery in fulfillment of their contract, but subject to a lien and detention until payment, which was due on delivery. They might deliver without, it is true, but the law fixes the " understanding " and meaning of the parties to be for cash, not trust, or credit. But the instruction evidently construes the delivery, or deposit on the bank, and piling, as a change of possession or ownership.

The third instruction is correct.

The qualification to the plaintiffs' second instruction is erroneous, in allowing the jury to engraft another contract upon the written one, as part of it, by an " understanding of the parties."

The contract was explicitly for three hundred cords—no more, no less—and parties are not at liberty, by " understandings of the parties," to make it cover five hundred and fifty-five cords, or any other different amount. It would change, by adding largely to, the contract.

If there were another agreement, written or verbal, for wood, embracing the same or similar terms, this should have been proven, and the instruction applied to *it*. The qualification of the qualification will not cure the error, for it assumes that it might be so proven, though it could not be *presumed*, and this is not a correct presentation of the rule.

We see nothing objectionable in the sixth instruction, and its several qualifications. The measurement is there put as an *illustration* of further acts to complete a delivery, and we under-

stand the qualifications as further illustrations. In this view, all are correct. Measurements may become essential to delivery, when required to separate a less from a greater quantity. It may be done, also, as a safe and convenient mode of proving the quantity, in some instances, and not essential to delivery.

The verdict is clearly unsustained by evidence, and the jury were misinstructed, as shown.

Had there been evidence, and the verdict rested upon the weight or preponderance, we should not interfere upon any slight differences with them.

But the delivery of five hundred and fifty-five cords on the bank, by teamsters' estimates, even were it shown by actual measurement, with the delivery to plaintiffs of two hundred and eighty-six cords, under a contract for three hundred, at two dollars per cord, and payment therefor at that price, and the payment of three dollars per cord, upon delivery of fifty-eight cords more at a subsequent time, we are unable to torture into an agreement for all that may be brought and piled on the bank, at the risk of plaintiffs, at any price. Much less would the law allow such facts to make it a part of the written agreement, upon any understandings.

We are unable to sustain this judgment, upon the record before us.

Judgment reversed, and cause remanded for new trial.

*Judgment reversed.*