## Metropolitan Accident Association v. Mary J. Bristol Adm'x, etc.

1. INSURANCE—*Rules of Mutual Company Should Be Enforced.*—It is the duty of courts and juries to recognize and enforce the conditions and limitations created by the members of mutual insurance companies, and they should not allow the funds of a company to be paid out in cases distinctly excluded from participation in the benefits of the order by the rules and regulations mutually agreed upon by the members.

Assumpsit, on an insurance policy. Appeal from the Circuit Court of Edgar County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the November term, 1896. Reversed and remanded. Opinion filed February 25, 1897.

SMITH, SHEDD, UNDERWOOD & HALL, attorneys for appellant.

JAMES A. EADS and DUNDAS & O'HAIR, attorneys for appellee.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

This was an action on a policy issued by the appellant company by the provisions whereof the company insured Richard A. Bristol (appellee's intestate) against personal injuries through " external, violent and purely accidental causes."

The policy was issued upon a written application of the assured for membership in the company, which contained a covenant upon his part that he would be bound by the " terms, conditions and limitations of the by-laws of the association," and in effect, that right of recovery under the policy should be subject to the conditions and limitations of the by-laws.

One of the by-laws provided the association should not be liable if death or injury should happen by " lifting or over-exertion " on the part of the assured or " in any case where there should be no external or visible signs of bodily injury."

The assured received personal injuries and brought suit to recover the indemnity contracted to be paid in case of total disability.

He died, pending the litigation, and appellee, as administrator of his estate, was substituted as party plaintiff.

The suit was instituted February 25, 1896, in Edgar county. The summons was sent to Cook county, the domicile of the company, and was there served.

The company, by pleas in the nature of pleas in abatement, based upon the theory it could only be sued in Cook county, questioned whether the Circuit Court of Edgar County had jurisdiction to proceed against it, and it has assigned as error that the court sustained a demurrer to these pleas.

The contention in this respect is the appellant company is neither a " fire " or " life " insurance company, within the meaning of those words as used in section 3 of the practice act, and hence that the provisions of that section authorizing the institution of suits against such companies in any county wherein the plaintiff resides, have no application to suits against it.

We need not follow the discussion of counsel *pro et con* upon this contention, for the reason the section in question was so amended by an act of the General Assembly, passed at the session in 1895, and in force July 1, 1895 (Session Laws 1895, p. 292) as to make its provisions applicable to insurance companies of every character.

The company filed three special pleas to the merits. In the first it was averred the injury received by the deceased was caused by "over-exertion;" in the second, that it was caused by "lifting," and in the third, that there was no external or visible signs of the alleged injuries.

An issue of fact as to the truth of the averment in each plea was raised and the cause submitted to a jury.

Verdict was rendered in favor of the plaintiff in the sum of $640 and judgment thereon, and this appeal followed.

Appellee's position was that the assured, while trying to move a pump stock which was in a wall, slipped and fell and " wrenched, or twisted " his spinal column by the force or concussion of the fall. That of the appellant company that the injury to the spine was produced by " over-exertion " and in " lifting " the pump stock.

The assured dictated to his daughter and signed and sent to the company, as the basis of his claim for indemnity, the following statement of facts as to the manner of his injury:

PARIS, ILL., August 28, 1895.

Our well having gone nearly dry, we had it cleaned out on Saturday morning, August 24th, to see if that would help matters any. The next morning when I got up I looked into the well to see if there was any gain in the amount of water present. It appearing to me that there was a gain in the quantity of water in the well, I tried to start the pump by using water from the cistern to make valves work, but that failed. I then took hold of the pump stock with the intention of pulling it to the center of the well where the water looked deepest. It was in that effort that I felt a severe pain, as from a blow with a club at the small of my back. I fell to the ground at once, helpless and screaming with pain. My family assisted me into the house and to

bed, where I have been ever since and likely to be for some time to come.  Dr. Tenbroeck, my family physician, was summoned at once.  On his arrival he injected morphine sufficient to allay the intensity of the pain and somewhat relieved me.  Since then I have lain in bed almost helpless, depending on members of my family for assistance when turning over or any other movement necessary to be made. The least sudden movement or jar or coughing causes intense pain for a few moments.  The doctor has kept me under the influence of morphine most of the time since the accident occurred.

Dr. Tenbroeck is my family physician.  I will raise no objection if the company desires an examination made by another physician or surgeon.

RICHARD A. BRISTOL.

Witness:  EMMA JANE BRISTOL.

Unless for some reason this statement should not have been accepted by the jury as the true history of the manner of the injury, clearly the finding should have been that assured was hurt by " over-exertion " or " lifting."

The testimony of the daughter, who wrote the statement at the dictation of the assured, her father, is relied upon to overcome the account as given in the statement, and to establish the assured accidentally lost his footing and fell, and his spine was sprained or twisted by the fall or the concussion of the fall.

Her version of the occurrence was:

" The first thing that he (father) did was to pour considerable water in the pump in order to start it, but he did not succeed at that, and took hold of the pump and attempted to turn it around; didn't attempt to lift it, but to turn it around, where is would be in a little different position.  I saw him after he took hold, but didn't see it immediately afterward.  I saw him as he took hold of the pump, but turned my back immediately after that to attend to some of my duties; the next thing I heard his body fall, and heard him scream, and I looked around and found him lying on the platform.  The sound of the fall was the first.  Imme-

diately after the fall I heard the scream. I started to him at once. He was lying a little on one side, with his feet out to the south, his hand toward the north; I think he had his hand hold of the pump. That part of the platform on which he was lying at the time of his fall was wet. I think it was slippery."

Nothing so testified to by the daughter is necessarily inconsistent with the statement of the father; and the fact she reduced the statements to writing, and attested the same as a witness after he had signed it, tends strongly to the conclusion she regarded it then as correct.

She was not looking at her father at the time when, according to his statement, he was engaged in endeavoring to move or lift the pump-stock.

It was while making that effort, he says, he felt the first stroke of pain; a severe pain, as though from the blow of a club upon his back. The mere fact, she heard the sound made by the fall of his body before his cries of pain, is easily reconciled with his assertion he felt the pain, and afterward fell to the ground "screaming with pain."

The suggestion the assured was in such condition when dictating the letter that he might have been misunderstood, can have but little weight, for the reason his amanuensis was the only eye witness of the occurrence the details of which was the subject of the dictation. The opinion of the physician is consistent with either view of the manner of the infliction of the injury.

We are constrained to the opinion that the finding of the jury the injury was not caused by "lifting" or "undue exertion," was manifestly against the weight of the evidence.

The deceased and other members of the appellant association composed the association.

It is a mutual company, organized and maintained by such members for the sole purpose of providing aid to such of the members as might be injured by purely accidental causes, and they mutually agreed its benefits should not extend to injuries which a member brought on by "lifting" or "over-exertion." The duty of courts and juries is to

recognize and enforce the conditions and limitations created by the members of the association.

This duty is violated and power unlawfully usurped if, out of mere sentiments of sympathy, courts and juries appropriate the funds of the association to the payment of benefits in cases not contemplated to be insured against by the assured and his fellow members, and distinctly excluded from participation in the benefits of the order by the rules and regulations mutually agreed upon by such members.

As the case must be again tried it is not appropriate we should say more upon the issue, whether there was external and visible signs of injury, than that we do not regard the verdict unsupported by the testimony in that respect.

For the reasons indicated, the judgment must be reversed and the cause remanded.