Traders' Mutual Life Ins. Co. v. Lucius F. Humphrey.

1. STATUTES—*Section 3 of the Practice Act Applicable to Insurance Companies of Every Character.*—Section 3 of the practice act, in regard to bringing actions against insurance companies, is applicable to insurance companies of every character.

2. SAME—*Where Word " May " Should Be Construed as " Shall."*—In interpreting statutes the word " may " should be construed as equivalent to " shall " in cases where it is necessary for the preservation or enforcement of the rights and interests of the public or third parties.

Traders' Mutual Life Ins. Co. v. Humphrey.

3. PRESUMPTIONS—*That Plaintiff Resided in the County Where Suit Was Brought.*—In the absence of any showing to the contrary, it will be presumed that the plaintiff resided in the county where the suit was brought.

4. BY-LAWS—*Interpretation, Construction and Legal Effect, a Question of Law.*—The interpretation, construction and legal effect of written instruments are exclusively for the determination of the court.

5. PRACTICE—*What is Not Raised by a General Objection that the Verdict is Excessive.*—A general objection that a verdict is excessive does not raise the question whether or not the verdict exceeds the *ad damnum* stated in the declaration.

6. ULTRA VIRES—*Corporation Can Do Only Those Things Which Are Within the Scope of Its Charter.*—A corporation can do only those acts which are within the scope of its charter, and if an act is not originally within the express or necessarily implied powers of the corporation, it is void, and no subsequent act can make it valid, by way of estoppel.

7. FRATERNAL INSURANCE—*Construction of Charter.*—The defendant is a fraternal insurance company with power under its charter to provide indemnity to acceptable members of the fraternity of Odd Fellows only. Plaintiff was elected a member of a Rebekah lodge, September 12, 1893, but was not initiated until October 10, 1893, at which time she signed the constitution and by-laws and was introduced to the lodge. Immediately upon receiving notice of her election, on September 12, 1893, she made written application to defendant for a certificate of insurance, which was issued to her September 21, 1893. The Sovereign Grand Lodge of the Independent Order of Odd Fellows, which has supervision over Rebekah lodges, expressly leaves the question as to when membership should commence, to local legislation, and the lodge in which the insured claimed membership, by a by-law, provided that membership in that lodge should commence upon a member being elected by a ballot vote. *Held*, that the issuing of a certificate to the insured was not an *ultra vires* act.

8. INSURANCE CONTRACTS—*Construction of.*—Policies of insurance being signed by the insurer only, and the language being that of the insurer, the policy must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure.

9. WORDS AND PHRASES—"*Member*" *Defined.*—The word member has been defined to mean a person considered in relation to any aggregate of individuals, to which he belongs; particularly, one who has united with or has been formally chosen as a corporate part of an association or public body of any kind, as a church or society.

10. APPELLATE COURT PRACTICE—*Objections Should Be Made in Trial Court.*—In the absence of objections to rulings of the trial court made in that court, such objections may not be raised for the first time in this court.

Assumpsit, on a beneficiary certificate. Appeal from the Circuit Court of Vermilion County; the Hon. Morton W. Thompson, Judge presiding. Heard in this court at the May term, 1903. Affirmed. Opinion filed August 28, 1903.

Hal H. Smith, Swallow, Stevens & Swallow, and Cox, Heldman & Lipson, attorneys for appellant; Frank M. Cox, of counsel.

Isaac A. Love and W. R. Jewell, Jr., attorneys for appellee.

Mr. Justice Puterbaugh delivered the opinion of the court.

This is an action of assumpsit by appellee against appellant on a policy of life insurance or certificate of membership, issued by appellant on the life of Sarah C. Humphrey for $1,000, payable to appellee, her husband. Trial resulted in verdict and judgment for $1,036.62 in favor of appellee.

The declaration consists of one count, and avers that appellant, by its then corporate name, Triple Link Mutual Indemnity Association of Illinois, on September 21, 1893, issued its certificate and delivered it to Sarah C. Humphrey, who was then a member of Schuyler Lodge No. 39, Daughters of Rebekah, of the Independent Order of Odd Fellows; that appellant in consideration of the warranties in the insured's application for membership, and on payment of all dues, etc., agreed to pay appellee $1,000 on the death of the insured, which occurred December 24, 1901; that insured paid all dues and appellee made proofs of death; that on October 15, 1901, appellant changed its corporate name to Traders' Mutual Life Ins. Co.; *ad damnum*, $2,000.

The certificate sued on, filed with the declaration, provides that it is fraternal insurance and for members of the fraternity of Odd Fellows only; that in consideration of the representations, agreements and warranties made in the application for membership, and which is referred to and made part of the contract, appellant issued the certificate to the insured, a member of said lodge No. 39, and upon

certain conditions promised to pay $1,000 to appellee if insured died while the certificate was in force.

The application for the insurance referred to in the cer-tificate and made a part thereof, and which was the foun-dation of the certificate, and was signed by the insured, provides that, " subject to the charter of said company, I hereby apply to the Triple Link Mutual Indemnity Associ-ation of Illinois for $1,000 membership on my life.   I hold membership in Schuyler R. D. (meaning Rebekah Degree) Lodge No. 39, located at South Bend, Indiana.   *   *   * I also agree that all the foregoing statements and answers in this application are by me warranted to be true and are offered to the company as a consideration for the con-tract."

To the declaration, appellant filed the general issue and a number of special pleas, to which replications were filed, and issue joined.

Under its special pleas, appellant assumed the burden of proving, among other things:

First, that its charter power or capacity at the time the certificate in question was issued, was limited to providing life indemnity for acceptable members of the fraternity of Odd Fellows not over sixty years of age, and that the issuing of the certificate was an *ultra vires* act on the part of appellant;  second, that the insured did not become a member of said lodge, or the fraternity of Odd Fellows, until October 10, 1893, which was after the delivery of the certificate to her.

The following facts are shown by the evidence :   Appel-lant company was originally organized under the name of the Triple Link Mutual Indemnity Company of Chi-cago, Illinois.   On November 11, 1892, a charter incor-porating said company was issued by the Secretary of the State of Illinois, under the provisions of " An act to provide for the organization and management of corpora-tions, associations or societies for the purpose of furnishing life indemnity," etc., in force July 1, 1887.   (Laws of 1887, 204.)   In its application or incorporation and by its

by-laws afterward adopted, it declared that the object for which the corporation was formed was to " provide life indemnity for acceptable members of the fraternity of Odd Fellows, payable upon the death of a member to widows, etc." On December 20, 1898, the charter of appellant was so amended as to change its name to that of Triple Link Life Insurance Company, and declare its object to be " to provide life indemnity for acceptable persons, payable to widows, etc., or to such beneficiaries as have an insurable interest in the life of a member; " and on September 20, 1901, its name was again changed to its present one.

Prior to September 12, 1893, the insured, who resided with her husband at South Bend, Indiana, was solicited by one Babcock, who represented himself to be a regularly authorized agent of appellant, to become a member of the appellant company. She was not an Odd Fellow, and on August 22, 1893, applied to Schuyler Rebekah Lodge No. 39, located at South Bend, Indiana, for membership therein. She was afterward, on September 12, 1893, elected a member of said lodge, but was not initiated until October 10, 1893, at which time she signed the constitution and by-laws and was introduced to the lodge. Immediately upon receiving notice of her election, on September 12, 1893, she made written application to appellant for a certificate of insurance, which application stated, *inter alia*, that she held membership in Schuyler Rebekah Degree Lodge No. 39, located at South Bend, Indiana. The certificate of membership upon which this suit was brought was issued to her on September 21, 1893. The insured thereafter paid and continued to pay all dues and assessments upon said certificate until her death, which occurred on December 24, 1901. Proofs of death were furnished appellant in February, 1901. Among them was a certificate signed by the noble grand and the recording secretary of Schuyler Lodge which contained the following statement:

"We do hereby certify that Sarah C. Humphrey was made a member of this lodge on the 10th day of October, A. D. 1893, and at the time of her death was a member in good standing in our lodge."

On December 13, 1901, appellant, in reply to an inquiry received from insured dated December 11th, and which was not in evidence, by its president, wrote her as follows:

" In reply to same, we will say that it is not necessary that you belong to any lodge in order to hold your present policy with this company. All that is necessary for you to do is to make your payments constantly and on time in the above named company, and your policy will be all right."

On March 4, 1902, appellant, by its president, notified appellee, by letter, that the company had recently obtained evidence which showed that at the time insured became insured in the company, she was not an Odd Fellow, and that the certificate was therefore void. Thereupon, on August 4, 1902, appellee brought this suit to recover the amount due upon the certificate.

It is urged that the trial court erred in overruling appellant's motion made during the trial, to dismiss the case for want of jurisdiction. On the first day of the trial, February 9, 1903, the deposition of appellee, offered and read in his behalf, disclosed the fact that at the time the same was taken, to wit, on December 2, 1902, he resided at Braceville, Ohio. Appellant then moved the court to quash the summons, and the service on appellant, and to dismiss the suit for want of jurisdiction, for the reason that the deposition of appellee showed that he was a resident of the State of Ohio. Section 3 of the practice act provides:

" The courts of record in the county where the plaintiff or complainant may reside shall have jurisdiction of all actions hereafter to be commenced by any individual against any insurance company incorporated by any law of this state; * * * and all process issued in any cause commenced in the county where the plaintiff may reside, wherein an individual may be plaintiff or complainant and any such company defendant, may be directed to any county of this state for service and return." (R. S., 1901, 1337.)

The provisions of this section are applicable to insurance companies of every character. (Metropolitan Accident Association v. Bristol, 69 Ill. App. 492.)

Appellant made no showing of non-residence in support of his motion, but relied solely upon the alleged admission contained in the deposition, and offered to show further that appellant was a resident of Cook county, Illinois. The præcipe for the summons in the case was filed on August 4, 1902. Appellee states in his deposition that at the time of the taking of the same he was a resident of the State of Ohio. Where he resided on August 4, 1902, when he brought suit, does not appear. In the absence of any showing to the contrary, it will be presumed that he resided in the county where the suit was brought. The motion was properly overruled.

Appellant seeks to avoid payment of the certificate on the ground that its charter limited the class to which it had power to provide indemnity to acceptable members of the fraternity of Odd Fellows only; that the insured was not a member of that fraternity until after the delivery of the certificate, and that the issuing and delivering of the same was *ultra vires*, and therefore void. If the insured, at the time she made application for the certificate, was a member of the fraternity of Odd Fellows, within the meaning of the laws governing that fraternity, the question of *ultra vires* becomes unimportant.

By its fourth special plea appellant assumed the burden of proving that the insured did not become a member until after the delivery of the certificate.

The record discloses that the fraternity known as the Independent Order of Odd Fellows is an independent order having a system of secret signs, grips, pass-words, tokens, lectures, obligations, etc., which are made known to the applicant for the first time at, and as a part of, the initiatory ceremonies, and after the application of an applicant has been favorably voted upon, and he, or she, is elected to membership. These secrets are known to Odd Fellows only. The order has written constitutions and by-laws. Its organization consists of subordinate lodges for men only, Rebekah degree lodges for women and men, a grand lodge in each state with jurisdiction over the subordinate

and Rebekah lodges in that state, and a sovereign grand lodge with final jurisdiction over the grand lodges of the states and the subordinate and Rebekah lodges.

The trial court submitted the question of membership to the jury as a question of fact, to be by them determined from the evidence. It also permitted a number of the past and present officers of the order to testify, after examining the by-laws in evidence, relative to membership, as to when, in their respective opinions, the insured became a member of Schuyler Lodge. This was error. Appellant having, as it claims, no knowledge in the matter, except as derived from the application of insured, it became necessary to look to the laws of the order to determine whether her statements therein, as to membership, was true. The question as to the existence of such laws was for the jury, but their interpretation, construction and legal effect was exclusively for the determination of the court.

"It is firmly and universally recognized that the judge is to construe and interpret the contracts and other written instruments of every description that are offered in evidence. Their construction and interpretation are governed by established rules of law, of which knowledge on the part of the jury can not be presumed, and hence the question must be left to the court." 1 Jones on Evidence, Sec. 172; I. C. Ry. Co. v. Cassell, 17 Ill. 389; City of Peoria v. Calhoun, 29 Ill. 317.

The by-laws in evidence which pertain either directly or indirectly to the question of membership, are as follows:

The laws of the Sovereign Grand Lodge of the Order provide:

"Section 681. When Membership Commences—Local Law.—The time when membership commences is a matter left to local legislation, whether it shall date from the night of his election or from the night he signs the constitution."

"Section 651. In all cases where a candidate for membership in a subordinate lodge has been elected, but subsequent to his election, and prior to his initiation, the lodge shall become satisfied that he is unworthy, it shall be competent for the lodge to annul such election, and declare it void, by a majority of two thirds of the members present."

" Section 657.   The initiation of a candidate is only complete when he has been introduced to the lodge."

The laws of the Grand Lodge of the State of Indiana provide as follows:

" Section 6.   No person shall be initiated into any lodge until the expiration of one week after his election," etc.

Section 7 is substantially the same as Section 651 of the laws of the Sovereign Grand Lodge above quoted.

Appellant insists that " the execution and delivery of the certificate of membership by appellant to the insured was an *ultra vires* act for the reason that the insured, not being a member of the fraternity of Odd Fellows, was excluded from membership in appellant by the express limitation in appellant's charter that the object for which appellant was incorporated was ' to provide life indemnity for acceptable members of the fraternity of Odd Fellows.' "

It is true that the law is that a corporation can do only those acts which are within the scope of its charter, and that if an act is not originally within the express or necessarily implied powers of the corporation, it is void, and that no subsequent act can make it valid, by way of estoppel, (Brewing Co. v. Klassen, 185 Ill. 37; Lurton v. Loan Ass'n, 187 Ill. 143,) and it is also true that the providing of life indemnity for others than " acceptable members of the fraternity of Odd Fellows " was not an act within the express or necessarily implied powers of appellant.   The contention of appellant, however, that the insured was not within the class for which the company had the power to provide life indemnity, is, we think, untenable, for the following reasons:

First.   It will be seen that by section 681 of its laws, above quoted, the Sovereign Grand Lodge expressly left the question as to when membership should commence, to local legislation.

We think that Schuyler Rebekah Lodge, in which the insured claimed membership, exercised the power so delegated to it, by the adoption of section 13 of its by-laws, which reads as follows:

" Any person qualified as provided in the foregoing sec-

tion may become a member of this lodge on being elected by a ballot vote, and on paying the fees and dues provided by these by-laws;" * * * " any sister shall remain a member so long as she pays her dues in this lodge, and obeys the laws of this lodge and of the Grand Lodge."

It is not contended that the insured was not qualified, or that she was not elected by a ballot vote, or that her election was ever annulled, or that she did not pay all the fees and dues required, or that she did not obey the laws, etc.; but it is insisted that she did not become a member of the lodge until she had been initiated, introduced to the lodge, and signed the constitution and a pledge to support the same. We think the word "may" as used in section 13 aforesaid, in the absence of any more explicit legislation upon the subject by the local lodge, can fairly and reasonably be construed to mean "shall," and that as between appellant and the insured, at least, she was a member of Schuyler Lodge, under the by-laws thereof, at the time she presented the application for the certificate in the defendant company.

"In interpreting statutes the word 'may' should be construed as equivalent to 'shall,' in cases where it is necessary for the preservation or enforcement of the rights and interests of the public or third parties." (Bouv. L. D. 218.)

We do not see why this rule of construction should not apply in this case. The insured had no part either in the adoption of the by-laws of the lodge, or in the organization of the insurance company, and if it be necessary in order to preserve or enforce the rights of appellee, why should not the word "may" be interpreted or construed favorably to him?

Appellant insists that because the contract of insurance was made in Illinois, and with an Illinois corporation, the law of the Grand Lodge of the Order in Illinois, which is as follows, should control, to wit: "A person is not a member by virtue of his election only; initiation and introduction by the committee and signing the constitution and pledge to support the constitution and laws, are necessary

to constitute membership," etc.    We consider this conten-
tion untenable and without force.

If the insured was an Odd Fellow under the laws of the
Sovereign Grand Lodge and of the lodge in which she
claimed membership, she was clearly an Odd Fellow within
the purview of appellant's charter.    The charter did not
restrict its purpose to the insuring of such members of the
fraternity only as were such within the meaning of the laws
of the Illinois branch or division thereof.

Second.    Waiving, however, the question as to whether
the insured was a member under the express provisions of
the by-laws of the local lodge, and assuming that under the
implied provisions of its by-laws, she was not, we are of
opinion that the issuing of the certificate in suit to the
insured was not an *ultra vires* act.    To determine the ques-
tion, it becomes necessary to construe the words " accept-
able member of the fraternity of Odd Fellows," as used in
appellant's charter.

The word " member " has been defined to mean " a per-
son considered in relation to any aggregate of individuals,
to which he belongs; particularly, one who has united with
or has been formally chosen as a corporate part of an asso-
ciation or public body of any kind, as a church or society."
(Cent. Dict.)

Appellant's charter and its by-laws provide that " the
object for which this corporation is formed is to provide
life indemnity for acceptable members of the fraternity of
Odd Fellows, payable upon the death of a member of this
corporation to the widows, heirs, relatives, legal represen-
tatives and the accepted designated beneficiaries of such
deceased members."

The Sovereign Grand Lodge, as its title seems to imply,
is the supreme governing body of the fraternity of Odd
Fellows, and the question as to when membership therein
should commence or begin, was a matter exclusively within
its powers and jurisdiction, if it chose to exercise the same.
It therefore becomes necessary and important to ascertain
what its legislation upon the subject had been.    As we have

seen, the Sovereign Grand Lodge, by section 681 of its laws, expressly left the question as to whether membership should begin upon the election of a member, or upon his election and subsequent initiation, to local legislation.  As we construe it, however, it also impliedly provides that while election is an essential prerequisite to membership, in the absence of local legislation, election alone would suffice; in other words, that all applicants became members of the order by election only, if the local lodge failed by its by-laws to require initiation, as well; that in the absence of further legislation by the local lodge, election was the sole and only requisite.  Appellant was not restricted by its charter to providing indemnity to members of the fraternity in Indiana or Illinois, or other particular localities, or of particular lodges, or those who might be members under the by-laws of any certain local lodge or lodges; but it had the broader power to insure any and all members of the fraternity within the limits of the United States, who were such within the meaning and intent of the laws of the supreme governing body thereof.  Under the power delegated to local lodges by the Sovereign Grand Lodge, different prerequisites might have been essential in the numerous lodges throughout the country; one lodge in a certain state or locality might have required both election and initiation, while another, or others, in the immediate vicinity or elsewhere, might have prescribed election only; and either or all were at liberty, at any and all times, to legislate otherwise or differently.

It certainly can not be the law, that the corporate powers of appellant—which was not a branch or part of the order, being an entirely distinct and separate organization therefrom and not subject to the jurisdiction and control thereof in any way—should be made shifting, uncertain and indefinite, at the legislative will of any one of the hundreds of subordinate lodges throughout the United States, or subject, at any time, to be limited, restricted or enlarged thereby.  If the appellant company had been a subordinate or state lodge of the order, incorporated under the

statute for the purpose of providing life indemnity to its members, the insured would have been bound by its by-laws, in the event that the question of membership had arisen as in the case at bar, and the cases cited by counsel for appellant would have been applicable. Appellant, however, aside from the requirement that all its members should be Odd Fellows, was as distinct from and disconnected with the order, as was any other mutual assessment indemnity corporation then in existence.

Upon a careful consideration of the question, we are of opinion that the broadest and most liberal construction warranted by appellant's charter and the supreme law of the order, should be given to the term " membership," and we therefore hold, that inasmuch as the insured had been elected to membership at the time she made application to appellant company, and notwithstanding she had not been initiated, she was a member of the fraternity of Odd Fellows. The issuance to her by appellant of the certificate of insurance in suit, was therefore within the limits of its corporate powers, and the defense of *ultra vires*, by it invoked, can not and does not apply in this case.

In conclusion, we will say that we find nothing in the record tending in the least degree to show that the insured did not at all times act in the utmost good faith toward appellant. She unquestionably believed, and was justified in so doing, that at the time she signed the application she was an Odd Fellow, having been so assured by Babcock, who claimed to represent appellant. She was, shortly after her election, regularly initiated and introduced to the lodge in due form, signed its constitution, and remained a member thereof, in good standing, until the time of her death. She paid all assessments required by appellant company, for over eight years. A short time prior to her death, in answer to a letter written by her to appellant, she was assured by its president that " it was not necessary for her to belong to any lodge in order to hold her then present policy with the company; that all that it was necessary for her to do was to make her

payments constantly and on time, to the company, and her policy would be all right."

To defeat a recovery by appellee under the strained construction of the meaning of the word "member" insisted upon by appellant, would, in our judgment, be both contrary to law, and a travesty upon justice.

"Policies of insurance being signed by the insurer only, and the language being that of the insurer, the provisions of the policy are usually construed most favorably for the insured, in case of doubt and uncertainty in its terms. The policy must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure." Healey v. Accident Association, 133 Ill. 556; Ins. Co. v. Hardesty, 182 Ill. 47.

The verdict and judgment were for $1,036.63, which amount is in excess of the *ad damnum*. Appellant, upon the motion for a new trial, assigned as one of the reasons therefor that "the damages awarded plaintiff by the jury were excessive," and the same error is assigned in this court. If the objection had been specifically raised in the trial court on the motion for a new trial, the error would undoubtedly have been corrected. In the absence of such specific objection the question can not be raised for the first time in this court. Loan Association v. Gorrie, 167 Ill. 414.

In view of our construction of the contract of insurance upon which the suit is based, we find no error in the record which could have been harmful or prejudicial to appellant, and the judgment of the Circuit Court will therefore be affirmed.