## John F. Devine, Administrator, Appellee, v. Rosenbaum Brothers, Appellant.

### Gen. No. 19,935.

1. TRIAL, § 163*—*when construction of contract question of law.*
Where a contract is in writing its construction presents a question
of law, if its terms are unambiguous.

2. MASTER AND SERVANT, § 856*—*when relation of independent
contractor may exist as to part of work.* One employed to do cer-
tain work may be an independent contractor as to certain parts
of the work and merely a servant or agent of the party employing
him as to the residue of the work.

3. MASTER AND SERVANT, § 857*—*what is effect of retention of
partial control.* One entering into a contract with another, who
reserves the right to control the contractor in a given particular,
thereby reserves to himself the powers of a master as to that par-
ticular.

4. MASTER AND SERVANT, § 857*—*retention of right to supervise.*
While the owner of premises contracting with another for the im-
provement of same has the right to see that the work is performed
in accordance with the contract, and an independent contractor
is not converted into a servant by provisions in the contract re-
serving to the employer certain rights of supervision during the
progress of the work, and upon its completion, such right of super-
vision implies merely the right to approve or disapprove the re-
sults of the work, and does not give the owner the right to make
directions as to the mode of arriving at such results.

5. MASTER AND SERVANT, § 857*—*what is test in determining re-
lationship as servant or contractor.* The absolute test in deter-
mining whether one employed to do certain work is a servant or
contractor is not the exercise of control by the employer, but it
is the right to exercise control; it is the possession by the em-
ployer of the right of interference that puts upon the employer
the duty of seeing that the employee does his duty properly.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

Devine v. Rosenbaum Brothers, 192 Ill. App. 30.

6. MASTER AND SERVANT, § 856*—*how relationship between employer and contractor determined.* The relationship between an employer and one contracting with him is to be determined by the contract as a whole, by its spirit and essence, and not by the phraseology of a single sentence or paragraph.

7. MASTER AND SERVANT, § 857*—*when contract creates relationship of master and servant.* Contract between the owner of premises and a contractor construed as giving the owner the right to control the selection of material under the contract and, hence, to render the owner liable for injury to an employee caused by a defect in the material selected.

8. MASTER AND SERVANT, § 856*—*what is effect of provision requiring superintendence by contractor.* A provision in a contract between the owner of premises and a contracting company, which required the president of the latter to personally, daily, superintend the work, is not inconsistent with a construction of the contract giving the owner power to control the selection of materials for use in the performance of the work contemplated by the contract.

9. MASTER AND SERVANT, § 856*—*what is effect of provision for compensation on commission basis.* A provision fixing a contractor's compensation at a certain percentage of the amount fixed as the maximum cost of the work, all savings in the actual cost to accrue to the employer, is not inconsistent with the latter's power to control the selection of material under the contract.

10. MASTER AND SERVANT, § 857*—*what is effect of stipulation in contract for maximum cost.* A provision in a contract between the owner of premises and a contractor fixing a certain amount as the maximum cost of the work, including the contractor's commissions, does not defeat a construction of the contract rendering the contractor a mere employee in so far as the contract permitted the owner to control the selection of materials for use in the performance of the work, on the theory that such control would vest in the owner power to require the use of materials of a value far in excess of the stipulated cost and thereby render the contract unconscionable, since the question whether the contract was unconscionable as between the contracting parties could not arise in an action against the owner for injury to an employee.

11. MASTER AND SERVANT, § 870*—*when instruction on liability for acts of contractor correct.* In an action against the owner of premises for injury to an employee due to the use of insufficient material in the performance of work under a contract giving the owner power to control the selection of materials, an instruction on the liability of the owner for the acts of the contractor "in

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and about providing the materials used in the construction," *held* correct.

12. APPEAL AND ERROR, § 1100*—*when questions raised in reply brief not considered.* A point raised for the first time in the reply brief will not be considered.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed March 11, 1915. Rehearing denied March 24, 1915.

MILLER, GORHAM & WALES, for appellant.

JAMES C. McSHANE, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This was an action in case, brought in the Superior Court of Cook County by John F. Devine, administrator of the estate of John Gambon, deceased, appellee, hereinafter designated as the plaintiff, against Rosenbaum Brothers, a corporation, appellant, hereinafter designated as the defendant, to recover damages for the death of the said Gambon, alleged to have been caused by the negligence of the defendant. The defendant was engaged in the general grain trade, and owned a grain elevator located at 87th street and Stewart avenue, in the city of Chicago. The Seckner Company was a corporation engaged in the reinforced concrete construction business in said city. C. M. Seckner was the president of the latter corporation. About August 20, 1910, the defendant concluded to improve its elevator property by having a large cement storage tank erected as an adjunct thereto. In looking about for a contractor to do the work, it learned of The Seckner Company and certain telephone conversations thereafter took place between Mr. Seckner, representing The Seckner Company, and the secretary of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the defendant Company, William Renstrom. There-
after, on September 1, 1910, The Seckner Company
wrote the defendant the following letter:

"Chicago, Illinois. September 1st, 1910.
Rosenbaum Brothers,
    Chicago, Ill.

GENTLEMEN: We, the undersigned, agree to build
one 40 by 50 concrete tank at plant, 87th street and
Stewart avenue, complete, for the sum of four thou-
sand twenty-eight ($4028.00) dollars; or you pay the
bills and give us six (6) per cent of cost, and we to
assist in buying when we can be of benefit. The fig-
ures are as follows, as we have estimated. If 42 feet
in diameter, add 5 per cent.

| | |
|---|---:|
| Excavation | $ 250.00 |
| Gravel | 431.00 |
| Cement | 448.00 |
| Iron | 558.00 |
| Forms | 479.00 |
| Jacks | 54.00 |
| Roof | 56.00 |
| Hoist | 245.00 |
| Labor | 1279.00 |
| | $3800.00 |

Very respectfully,
    THE SECKNER COMPANY,
        C. M. SECKNER, President."

On the receipt of the same, the defendant sent to
The Seckner Company the following letter:

"Chicago, Illinois, September 1, 1910.
The Seckner Company, Chicago.

GENTLEMEN: We hereby accept your proposal of
this date to build one concrete tank 40x50 feet at our
plant at 87th St. & Stewart Ave. at a sum not to exceed
$4,028.00 which includes your commission of 6 per
cent. We are to pay all bills and vouchers must be
presented to us for all material and labor. It is also
understood that if there is any saving in the cost of
material as shown by your estimates, such saving ac-

crues to us. The work is to be superintended by your Mr. C. M. Seckner, who will watch the work daily until completed. It is understood that the above figures are on basis of a 40-foot tank, and if it is found practical to erect a 42-foot tank, the above estimate will be increased 5 per cent.

Kindly acknowledge receipt, and oblige,

Yours truly,

ROSENBAUM BROTHERS,

Wm. Renstrom.

W. R.—M.

We will pay you commission on the figures in your estimate, so if there is any reduction in price of material or less cost of labor it will not affect your commission.

WM. RENSTROM.''

The Seckner Company, on receipt of the last letter, wrote the defendant as follows:

"Chicago, Illinois, September 1, 1910.

Rosenbaum Brothers, 77 Board of Trade.

GENTLEMEN: We are in receipt of your acknowledgment of our proposition and will begin work at once.

Respectfully yours,

THE SECKNER COMPANY,

per C. M. S.''

The Seckner Company immediately commenced the building of the tank, and when the work was within a few hours of completion, a certain I-beam and truss rod, used for the purpose of supporting the roof of the tank, gave way (because they were insufficient in size and strength for the purpose for which they were provided and used), causing a collapse of the roof, and several workmen, one of them the plaintiff's intestate, were precipitated to the bottom of the tank, and the plaintiff's intestate was killed. The case was tried before a court and a jury and a verdict was returned by the latter, finding the defendant guilty and assessing the plaintiff's damages at the sum of $8,000. Judgment was entered on the verdict and this appeal followed.

The defendant contended in the lower court that the contract between it and The Seckner Company (evidenced by the three letters heretofore referred to) is plain and unambiguous; that by its terms The Seckner Company is made an independent contractor and not an agent or servant of the defendant, and that the defendant is therefore not liable to the plaintiff in this case. This was the sole defense interposed by the defendant to the claim of the plaintiff. To quote from the defendant's brief: "At the trial the only defense urged upon the court by Rosenbaum Bros. was that they were not responsible for the negligence of The Seckner Company, since the latter was an independent contractor." This is the only defense interposed in this court, and the only grounds urged by the defendant for a reversal of the judgment are, that the trial court erred in refusing to give to the jury, at the request of the defendant, a peremptory instruction in favor of the defendant, and in giving to the jury, at the instance of the plaintiff, the following instruction:

"The court instructs the jury that, under the law and the evidence, The Seckner Company was not an independent contractor, but was merely defendant's agent in what it, The Seckner Company, did, or omitted to do, in and about providing the materials used in the construction of the tank and roof; and if you believe from the evidence that the I-beam and truss rod that fell were of insufficient size and strength, for the purpose for which they were provided and used, and that either the defendant, or The Seckner Company, was guilty of negligence in providing said I-beam and truss rod, for such use, as alleged in the declaration; and that such negligence, if any, of the defendant, or The Seckner Company was a proximate and concurrent cause of the collapse of the roof of the tank; and that deceased did not assume the risk of such negligence, if any, and was not guilty of contributory negligence, then you should find the defendant guilty."

The trial court admitted, over the objection of the defendant, a mass of evidence as to what the parties did under the contract. This evidence was admitted by the court for the sole purpose of showing the interpretation given to the contract by the parties themselves, as shown by their acts, and while the defendant in this court still insists that this action of the trial court was improper (for the reason that the written contract was plain and unambiguous), it has not assigned error in that regard, and it is therefore not necessary for us to pass upon the question as to whether the trial court erred in admitting the said evidence. It may be said here, however, that some of this evidence tended strongly to show that the defendant exercised a control over the material that went into the construction of the tank, and that none of the said evidence, either for the plaintiff or for the defendant, was inconsistent with the theory that the defendant reserved the right of control in the matter of the material.

The defendant insists that the written contract between it and The Seckner Company (evidenced by the three letters) is plain and unambiguous; that by its terms, The Seckner Company is made an independent contractor, and that therefore the defendant is not liable to the plaintiff in this case; and the defendant further insists that the relationship between it and The Seckner Company must be determined solely from the terms of the written contract. We think that the written contract is reasonably plain and unambiguous, and as neither party to this case claims that there was any departure from the terms of the said contract, the relationship between the defendant and The Seckner Company must be determined solely from the terms of the said contract. Where the contract is in writing, its construction is a matter of law, if its terms are plain. *Pioneer Fireproof Const. Co. v. Hansen,* 176 Ill. 100.

"The test generally applied in answering the question, who are independent contractors? is 'independence of control in employing workmen and in selecting the means of doing the work.' 'The proper criterion by which to determine whether in a given case the relation of master and servant exists is found in the right of the master to order and control the other in the performance of the work. A master is one who not only prescribes to the workman the end of his work, but directs, or at any moment may direct, the means also; or as it has been put, "retained the power of controlling the work."' Again it is said the true test by which to determine whether one who renders service for another, does so as a contractor or as a servant, is to ascertain whether he renders service in the course of an independent occupation in which he represents the will of his employer only as to the result of the work and not as to the means by which it is accomplished." Moll on Independent Contractors and Employers' Liability, pp. 30, 31. "In actual affairs an independent contractor generally pursues the business of contracting, enters into a contract with his employer to do a specified piece of work for a specified price, makes his own sub-contracts, employs, controls, pays and discharges his own employees, furnishes his own material and directs and controls the execution of the work. Where these conditions concur there is, of course, no difficulty in determining his character as such. It is only where one or more of them is lacking that a question arises. The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work and have the right to control the mode and manner of doing it." 1 Shearman & Redfield on Negligence (6th Ed.), p. 396. To the same effect is 16 Am. & Eng. Encyc. Law (2nd Ed.), p. 187.

"An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." 1 Jaggard on Tort, sec. 73, p. 228. "In every case, the decisive question is, Had the defendant

the right to control, in the given particular, the conduct of the person doing the wrong? Does he reserve to himself the essential powers of a master?" 1 Thompson on Negligence (2nd Ed.), sec. 622, pp. 570, 571.

"The absolute test is not the exercise of power of control, but the right to exercise power of control. * * * Although the trustees should be across the Atlantic, nevertheless, * * * if they retained the power to control and direct the work, they would be liable; because it is the possession of the right of interference, the right of control, that puts upon a party the duty of seeing that the person who stands in that relation does his duty properly. If they have retained to themselves the right of directing the mode of doing the work, then, if the work is done wrong, the simple principle is that they are responsible." *Linnehan v. Rollins,* 137 Mass. 123. To the same effect are 16 Am. & Eng. Encyc. Law, *supra,* p. 188; 26 Cyc. of Law and Proc. p. 1547, and Moll on Independent Contractors and Employers' Liability, p. 43. "The relation of master and servant does not cease 'so long as the master reserves any control or right of control over the method and manner of doing the work, or the agencies by which it is to be effected.' " *Speed v. Atlantic & P. R. Co.,* 71 Mo. 303.

A person employed to do certain work may be an independent contractor as to certain parts of the work and merely a servant or agent of the party employing him as to the residue of the work. Moll on Independent Contractors and Employers' Liability, p. 40. To the same effect is Shearman & Redfield on Negligence (6th Ed.), p. 399, and *Speed v. Atlantic & P. R. Co., supra,* pp. 303, 309. If a defendant has retained the right to control in the given particular the conduct of the person doing the wrong, he has reserved to himself the powers of a master as to that particular. 1 Thompson on Negligence, *supra,* p. 570. The relation of master and servant exists "so long as the master reserves any control or right of control over the method

and manner of doing the work, or the agencies by which it is to be effected." Wood on Master and Servant, sec. 281.

"A reservation by the employer of the right by himself or his agent to supervise the work for the purpose merely of determining whether it is being done in conformity to the contract does not affect the independence of the relation." 16 Am. & Eng. Encyc. of Law (2nd Ed.), p. 188. This well-known doctrine is followed in Illinois. *Pioneer Fireproof Const. Co. v. Hansen, supra.* While the owner has a right to see that the work is constructed according to contract, and an independent contractor is not converted into a servant by provisions in a contract which reserve to the employer certain rights of supervision during the progress of the work and at its completion, nevertheless, this right of supervision means merely a right to approve or disapprove the results of the work, and it does not give the owner the right to make directions as to the mode of arriving at such results.

The relationship between the defendant and The Seckner Company "is to be determined by the contract as a whole,—by its spirit and essence,—and not by the phraseology of a single sentence or paragraph." *Foster v. City of Chicago,* 197 Ill. 268.

It is clear that if the defendant had accepted the first proposition in the letter of The Seckner Company, the latter, in the performance of the work, would have been an independent contractor; it is equally clear that if the defendant had accepted without qualification the second proposition of The Seckner Company in the same letter, the latter would have been the agent or servant of the defendant. The question to be determined is, what relationship was created between the defendant and The Seckner Company by the written contract between the said parties, evidenced by the three letters heretofore referred to in this opinion?

The defendant contends that by its letter of September 1, 1910, it accepted neither the first nor the second proposition made by The Seckner Company, but that it made a new proposition to The Seckner Company, the terms of which were as follows: "That The Seckner Company shall, for the maximum price of $4,028, construct a concrete tank forty by fifty feet, for the storage of grain, at the plant of the defendant at 87th street and Stewart avenue, the price also not to be greater than the actual cost plus six per cent. of the estimated cost. The contract further provides that the defendant shall pay all bills, and vouchers must be presented by the defendant to The Seckner Company for all material and labor, and the president of The Seckner Company shall superintend the work;" that "the contract in question did not give defendant the right to specify or control the kind or character of materials going into this tank; and that the case was a proper one for a directed verdict for the defendant;" but that even "if this contract had given defendant a power of control over the materials used for this tank, that fact would not have deprived The Seckner Company of its character as an independent contractor in any respect."

The plaintiff contends that the defendant by its letter accepted the second proposition of The Seckner Company, subject to the following modifications: "(a) That the acceptance obligated The Seckner Co. to see that the total cost, including its commission, did not exceed the estimated cost of $4,028; and (b) that the acceptance provides that any reduction in the cost of labor and material below that contained in the proposition should not affect The Seckner Co.'s commission; and (c) that the acceptance required that Seckner should personally, daily, superintend the work;" and that the said modifications "did not affect the proposition in so far as it relates to the question, which is

important here, namely, as to whether the proposition did, or did not, cast upon defendant the duty to provide the material, and as to whether it did, or did not, reserve to defendant the right of control over The Seckner Co., in and about providing the material. The question, therefore, is: Did the contract as made by the Seckner proposition, and its acceptance, cast upon defendant the duty to provide the material; or, at least, did it reserve to it the right of control over The Seckner Co. in that respect?'' that the contract reserved to the defendant the right of control over The Seckner Company in reference to providing the material for the tank and that therefore the latter was but an agent or servant of the defendant and not an independent contractor, *in that regard.* The plaintiff further contends that The Seckner Company, under the contract, was a servant or agent of the defendant *in all respects,* but that as the insufficiency of the I-beam and trust rod was the cause of the accident, it is immaterial whether or not The Seckner Company was an agent or servant of the defendant in reference to the manner in which the work was performed.

As we have heretofore pointed out, an employee may be an independent contractor as to part of the work and a mere servant of the person employing him as to the residue of the work, and therefore the defendant's contention that even if the contract had given it a power of control over the materials used for the tank, nevertheless, The Seckner Company would have been an independent contractor in all respects under the contract in this case is without merit. The defendant cites in support of its contention a number of cases, where the right reserved by the owner was merely one of inspection or supervision; also cases to the effect that an owner may provide material or labor and nevertheless the contractor be an independent contractor. It is true that under the terms of certain

contracts an owner may provide material or labor or both and nevertheless be not liable for the happening of an accident where it appears that the same occurs as a result of the negligence of the contractor, in performing a part of the contract over which the owner has no right of control. None of the Illinois cases cited by the defendant (*Pioneer Fireproof Const. Co. v. Hansen, supra; Foster v. City of Chicago,* 197 Ill. 264; *Vacker v. Yeager,* 151 Ill. App. 144; *Stanley v. Aurora, E. & C. R. Co.,* 166 Ill. App. 132) supports the defendant's contention.

The vital question for us to determine in this case is, therefore, narrowed down to this, had the defendant the right under the contract to provide the material, or at any rate, had it the right of control over The Seckner Company in the matter of the providing the material used in the construction of the tank? The plaintiff claims that the defendant had such power; the defendant insists that it did not, and we must, therefore, construe the contract, as made by the letters in question, for the purpose of determining, if possible, the intention of the parties on this vital question.

In its reply to The Seckner Company's letter, the defendant commences with the following: "We hereby accept your proposition." The first proposition of The Seckner Company was that it would build the tank for a *lump sum,* and it is clear from a reading of the entire letter of the defendant, not only that it did not accept this proposition, but that it wished to make one of an entirely different kind. It is clear, also, that it did not accept the second proposition unqualifiedly, but we think that it is plain that it accepted the second proposition, subject to certain modifications. The material modifications are, that The Seckner Company was obligated to see that the total cost of the tank to the defendant, including the commission of the said Company, did not exceed

the amount of the estimated cost, $4,028; that C. M. Seckner should personally, daily, superintend the work, and that if there was any saving in the cost of labor or material from the figures contained in the estimate of The Seckner Company, that fact should not affect the amount of the commission of the said Company. Any of the other "provisions" in the defendant's letter of acceptance were but reiterations of what was contained in The Seckner Company's second proposition or express statements of what would be implied from the terms of the said proposition. The Seckner Company used the following language (*inter alia*) in making its second proposition: "*You pay the bills and give us six (6) per cent. of cost, and we to assist in buying when we can be of benefit.*" This language plainly means that the defendant should provide the material to be used in the construction of the tank and should pay for the same, and The Seckner Company, in anything it might do in that regard, under a contract with such a provision, would be but the agent or servant of the defendant and subject to its control. After a very careful examination of the defendant's letter of acceptance, we have been unable to find anything in it that changes or modifies the second proposition in the particular to which we have called attention. The provision that Mr. Seckner should personally, daily, superintend the work is entirely consistent with the construction that the defendant reserved the right of control in and about providing the material used. In fact, we think there is considerable force in the contention of the plaintiff, that the defendant, by this provision, emphasized its right of control over The Seckner Company even as to the persons who should directly carry on the work. The provision as to the commission of The Seckner Company is also entirely consistent with the theory of the defendant's right of control in the matter of material;

and the purpose of the same, as we interpret it, was to cause The Seckner Company to use its best skill and care in the matter of the buying of the material when the defendant desired its assistance in that regard, and to bring about that result, the defendant was willing that the pay of The Seckner Company (fixed on a commission basis) should be figured on the amount of the maximum cost of the work to the defendant instead of on the actual cost of the same.

The defendant strenuously contends that the provision in its letter to the effect that the tank should be built at a cost not to exceed $4,028, including The Seckner Company's commission of 6 per cent., conclusively shows that the defendant did not intend to reserve the right of control in and about providing the material to be used in the construction of the tank; that the construction contended for by the plaintiff would give the defendant the right to extort from The Seckner Company material worth far in excess of $4,028, and that such provision in a contract would be so unconscionable that a court would refuse to enforce it, and the defendant insists that its construction of the contract produces a conscionable agreement between it and The Seckner Company, and therefore it should prevail. This is not a suit between The Seckner Company and the defendant. It is a suit of a third party against the defendant, and the contract is competent evidence in this case only for the purpose of determining the relationship between The Seckner Company and the defendant, and the sole question to be determined from the contract is, did it reserve to the defendant the right to provide the material or the right of control over The Seckner Company in the matter of providing the material used in the construction of the tank. So far as the rights of the plaintiff in this case are concerned, the question as to whether or not the contract would be held to be

an unconscionable one, in a proceeding brought by The Seckner Company against the defendant, is of no importance here, if it clearly appears from the entire contract that the defendant retained control of The Seckner Company in the matter of the material. The clause relied upon by the defendant must of course be considered together with all other parts of the contract in determining the intent of the parties in that regard.

The Seckner Company in its second proposition expressly stated that the defendant should have the control in the matter of the material, and the defendant in its modified acceptance of this proposition certainly did not expressly relinquish this right of control, and we are unable to see anything in its letter from which it could be reasonably held that the defendant impliedly relinquished the said right. When its entire letter—"its spirit and essence,"—and not the phraseology of a single sentence or paragraph, is considered, we do not think that it can be reasonably said that the defendant *relinquished all right of control,* in and about providing the material to be used in the construction of the tank. And if it did not, The Seckner Company was not an independent contractor in that particular. As we interpret the contract, the defendant desired the knowledge, skill and experience of the president of The Seckner Company, and it expected him to take an active part in the buying of the material and the construction of the tank, but, nevertheless, it wished to reserve to itself the essential powers of a master over the said Company. Mr. Seckner was to *superintend* the work, and if The Seckner Company assisted the defendant in buying material the same was to be billed to the defendant, who was to pay for it. The defendant could not retain the power of a master without assuming its responsibilities.

The writer of this opinion (speaking for himself alone) thinks that the contract might well be construed

to mean that $4,028 was an estimated cost and not a fixed maximum cost for the tank; that when the entire language of the defendant's letter, including the postscript of the same, is considered together, it is reasonably clear that the defendant meant to accept $4,028 as an estimated cost of the tank. The Seckner Company, in its second proposition, clearly stated that $4,028 was the *estimated* cost of the work, and while it is true that the defendant, in the first paragraph of its letter of acceptance says, "at a sum not to exceed $4,028.00, which includes your commission of six (6) per cent.," nevertheless, in the second and third paragraphs of the letter, and in the postscript thereto, it refers to the $4,028 as an *estimate*. The first sentence of the defendant's letter purports to be an acceptance of the proposition of The Seckner Company, but it contains a misstatement of the proposition, in so far as it makes $4,028 a maximum cost, instead of an estimated cost.

We are of the opinion that the trial court did not err in refusing to give the peremptory instruction offered by the defendant, or in giving to the jury the instruction for the plaintiff that has been heretofore quoted in this opinion. In this instruction given for the plaintiff, the court instructed the jury that The Seckner Company was not an independent contractor but was merely the defendant's agent, *"in what it, The Seckner Company, did, or omitted to do, in and about providing the materials used in the construction of the tank and roof."* It will be noted that the trial court did not hold, by this instruction, that The Seckner Company was defendant's agent in all respects. If we are right in our construction of the contract, the trial court was certainly justified in giving this instruction.

In its reply brief the defendant contends that the accident happened, not because the I-beam and truss rod were insufficient for the purpose for which they

were intended, but because they were used improperly; that if they had not been used improperly, they would have been entirely sufficient and safe for the purposes for which they were intended, and the defendant argues that, as it had no control under the contract, over the use of the I-beam and truss rod, it is therefore not liable in this case. It would be a sufficient answer to this contention to say that this point is raised for the first time in the reply brief, and therefore, cannot be considered by us. *Morton v. Pusey,* 237 Ill. 26; *People v. Gray,* 251 Ill. 431. However, we find ample evidence in the record tending to prove that the roof collapsed because of the insufficient size and strength of the I-beam and truss rod to do the work for which they were provided, in fact, the defendant has not, by any assignment of error, questioned the sufficiency of the plaintiff's case in that regard. Nor has the defendant made any point, by assignment of error, that the verdict is manifestly against the weight of the evidence.

The judgment of the Superior Court of Cook County will be affirmed.

*Affirmed.*