BERRY v. PULLMAN CO.

(Circuit Court of Appeals, Fifth Circuit. March 16, 1918. Rehearing Denied April 10, 1918.)

No. 3177.

1. RELEASE ☞7—CONSTRUCTION.

Where a passenger on a railroad, who was injured while alighting from sleeping car, executed an agreement covenanting not to sue the railroad company, but expressly reserving all rights of action against the sleeping car company, such agreement cannot be treated as a release of one joint tort-feasor, which would release all, and, despite the use of the expression "quitclaim," the instrument must be deemed a mere covenant not to sue, and not barring an action against the sleeping car company.

2. PLEADING ☞214(8)—DEMURRER—EFFECT.

Where a passenger, who in consideration of $1,000 had covenanted not to sue a railroad company, sued the sleeping car company, and in connection with other pleas it set up that the passenger had not suffered injury to the extent of $1,000, a demurrer to the pleas cannot be construed as an acknowledgment that the passenger's injuries did not amount to $1,000, and so to preclude further recovery, for the plea merely presented an issuable defense for the jury.

In Error to the District Court of the United States for the Northern District of Mississippi; Henry C. Niles, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Mrs. A. L. Berry against the Pullman Company. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

Wm. D. Anderson, of Tupelo, Miss., and Jas. A. Cunningham, of Booneville, Miss., for plaintiff in error.

Robert H. Thompson, of Jackson, Miss., and W. M. Cox, of Baldwyn, Miss., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. The plaintiff in error here brought suit against the Pullman Company for damages, alleged in the petition to be $25,000, for injuries she sustained while being removed from a Pullman car on which she was a passenger from Memphis, Tenn., to Tupelo, Miss. She alleges that when she went on the Pullman car the company had notice that she was an invalid and would require special attention as such. The Pullman car was being operated from Memphis to Tupelo over the St. Louis & San Francisco Railroad, of which James W. Lusk, W. B. Biddle, and W. C. Nixon were at that time receivers. In being removed from the Pullman car, in an invalid's chair, she says, in her suit, that by the negligence of the Pullman employés she was allowed to fall on a hard rock pavement, and thereby received her injuries, which she says were severe and permanent. She says in her suit against the Pullman Company that:

"A porter of the defendant company willfully and negligently passed an 'All right' signal to the train to pull out at a time when plaintiff was in a position of great peril, and the same known to him, or by the exercise of reasonable care would have been known."

As defense to this suit against the Pullman Company two special pleas were filed, in which it was set up, in effect, that the plaintiff, after she was injured, brought suit against the St. Louis & San Francisco Railroad Company, and its receivers, for such injury, and afterwards settled with the receivers for the sum of $1,000. The pleas, while somewhat different in character, make, with one exception, which will be referred to hereafter, a single question, and that is the claim that the release of the receivers of the railroad company for the sum of $1,000, and the paper executed to them as a release of liability on their part, had the effect of releasing also the other joint tortfeasor, the Pullman Company. The pleas are called the first and second pleas. The second plea has attached to it the following:

### "Covenant Not to Sue.

"Whereas, on or about December 23, 1913, the undersigned, Annie T. Lee Berry, of Booneville, Mississippi, while a passenger on a passenger train of the St. Louis & San Francisco Railroad, then being operated by James W. Lusk, W. B. Nixon, and W. B. Biddle, receivers, while being removed from a car of the Pullman Company, at Tupelo, Mississippi, by employés of the said Pullman Company, she being then an invalid, received injuries, which she says are of a serious and permanent nature; and

"Whereas, the undersigned, Julius E. Berry, as the husband of Annie T. Lee Berry, claims to have been put to expense and suffered loss and dam-

ages by reason of the accident and injuries to his said wife, Annie T. Lee Berry; and

"Whereas, the undersigned, Annie T. Lee Berry and Julius E. Berry, claim that the accident and injury was ·the result of the actionable negligence of the receivers aforesaid, James W. Lusk, W. C. Nixon, and W. B. Biddle, and the Pullman Company, through their respective agents and employés, and being present and knowing the facts surrounding the accident and injury, believe the negligence of the aforesaid receivers to have, been slight, while that of the Pullman Company was gross; and

"Whereas, James W. Lusk, W. C. Nixon, and W. B. Biddle, as receivers of the St. Louis & San Francisco Railroad, are desirous of preventing litigation against them and the resultant expenses thereof, to recover damages for their negligence, if any, and such receivers expressly deny that they were guilty of any negligence; and

"Whereas, the undersigned, Annie T. Lee Berry and Julius E. Berry, are willing to covenant not to sue the said railroad receivers or their employés for the injuries sustained, or that may hereafter develop, by reason of said accident, but desire to expressly reserve unto themselves their right of action against the Pullman Company and the agents and employés of said Pullman Company:

"Now, therefore, in consideration of the sum of one thousand dollars ($1,000.00), to us this day paid by James W. Lusk, W. C. Nixon, W. B. Biddle, receivers, St. Louis & San Francisco Railroad, we hereby covenant and agree not to sue or prosecute any suit, action at law or bill in chancery, against the said railroad receivers, or their employés, to recover damages for and on account of the accident and injury aforesaid, but in so doing distinctly and expressly reserve unto ourselves any and all rights of action we may have against the Pullman Company, to recover damages for said accident and injuries, this instrument not being executed in full settlement of our entire cause of action for the said accident and injuries, but being a mere quitclaim and covenant not to sue, so far as it may relate to any interest of the said receivers and railroad, but not applying in any sense to any cause of action we· may have against the Pullman Company, or the employés of the Pullman Company.

"Before executing this instrument, the undersigned, having fully informed themselves of its contents, covenant and represent that they are the persons and bear the relations therein named, are of lawful age, and legally competent to execute it, have been advised by counsel to execute it voluntarily, with full knowledge thereof.

"Given under our hands, this the ...... day of March, 1915.

"[Signed]   (Mrs.) A. L. Berry.
"J. E. Berry.

"Witness:   W. H. Critz,
          "Sara L. Buchanan."

The two pleas were demurred to, and both demurrers overruled, and, the plaintiff declining to plead further, final judgment was entered dismissing the plaintiff's case, from which judgment this writ of error is prosecuted.

[1] The question is, therefore, whether this paper, executed by Mrs. Berry and her husband, J. E. Berry, to the receivers of the railroad company, is a release of the Pullman Company. This question has been before the courts, and the decisions are not at all in accord. In 34 Cyc. p. 1086, the law is thus stated:

"A, release under seal of one joint tort-feasor releases him and all his joint wrongdoers, because a sealed release operates to extinguish the cause of action. Moreover, it has been held that a reservation of the right of the injured party against the releasee's cotort-feasors is repugnant to the nature of the instrument and void, for the right of action cannot be extinct as to

one tort-feasor and alive as to his fellow wrongdoers, and, having been destroyed as to one, it is extinguished for the benefit of all. The logical and legal soundness of this rule, however harsh its application may be in the particular case, is undoubted, provided the sealed instrument is once construed to be a release, but to escape the application of this principle, where it would work injustice and defeat the evident intention of the parties, the modern tendency of the courts is to construe, if possible, such instruments as covenants not to sue, which accordingly do not release the co-obligors. Moreover, the common law has been altered in some jurisdictions by statute."

This question has been before the Supreme Court of Kentucky in Louisville & Evansville Mail Co. v. Barnes' Adm'r, 117 Ky. 860, 79 S. W. 261, 64 L. R. A. 574, 111 Am. St. Rep. 273. What was there held can probably be determined from the fourth headnote of the case, which is as follows:

"The acceptance by one, who has a cause of action against two joint tort-feasors, of a sum of money from one of them in part satisfaction and in consideration of a release of the tort-feasor making the payment, does not preclude recovery against the other."

That case was very thoroughly considered, as shown by the opinion of the court. In the briefs of counsel, which precede the opinion of the court, will probably be found all the cases which were deemed pertinent, pro and con, up to the time that decision was made in 1904. A strong case on this subject is a decision of the Supreme Court of Tennessee in the case of Smith v. Dixie Park & Amusement Co., 128 Tenn. 112, 157 S. W. 900. The court, in the opinion there, by Mr. Justice Williams, says:

"A number of courts hold that a release which shows that it is not intended to evidence a settlement of the plaintiff's entire demand based on a tort, but reserves the right to pursue one or more of the joint wrongdoers for the balance, is not to be treated as a release of all, but as a covenant not to sue, with result of nonrelease of such other or others"

—citing the cases, and then proceeds:

"The reasons advanced in support of these decisions are that the rule gives effect to the intention of the parties executing the instrument, without violating any rule of morals or public policy, and that it tends to encourage compromises, which the law favors. The cases holding to the contrary are numerous, and are believed to give the weight of authority to the maintenance of the rule that such a release will not, nothing else appearing, be deemed a mere covenant not to sue"

—citing a considerable number of cases. The court proceeds, later in the opinion, to say:

"Releases of, and covenants not to sue, a wrongdoer have from early times been considered distinct. A covenant not to sue one of several joint obligors or joint tort-feasors did not at common law operate to discharge others from liability, since it was said not to have the effect, technically, of extinguishing any part of the cause of action."

And still later this:

"Indicia of a covenant not to sue may be said to be: No intention on the part of the injured person to give a discharge of the cause of action, or any part thereof, but merely to treat in respect of not suing thereon (and this seems to be the prime differentiating attribute); full compensation for his in-

juries not received, but only partial satisfaction; and a reservation of the right to sue the other wrongdoer"

One of the strongest cases on this subject is a decision by the Circuit Court of Appeals for the Eighth Circuit. Carey v. Bilby, 129 Fed. 203, 63 C. C. A. 361. The opinion by Circuit Judge Thayer in that case so fully covers the question here that we quote the larger part of it, which is brief, as follows:

"It is an old and well-established rule of law that the release of a cause of action as against one of two or more joint tort-feasors or joint obligors operates as a release of all. This is upon the theory that, when one has received full compensation for a wrong, no matter from which wrongdoer or from what source, the law will not permit him to recover further damages. Lovejoy v. Murray, 3 Wall. 1, 17, 18 L. Ed. 129. When a release of a cause of action for a tort is given by the injured party to one of two or more persons who committed the wrong, the release is construed most strongly against the party executing it. The law indulges in the presumption that the release was given in full satisfaction for the injury, and upon a sufficient consideration, and will not permit the presumption to be overcome by oral proof to the contrary. Ellis v. Esson, 50 Wis. 138, 6 N. W. 518, 520, 36 Am. Rep. 830; Bronson v. Fitzhugh, 1 Hill [N. Y.] 185, 186. Sometimes, however, as in the case in hand, a release executed in favor of one wrongdoer is accompanied with the reservation of the right to sue others who were jointly concerned in the wrong, and in such cases the question has frequently arisen, how shall such an instrument be interpreted? Shall the reservation of the right to sue others be ignored, and the instrument treated as raising a conclusive presumption that full compensation for the wrong has been made, as though it were a technical release under seal, or shall the reservation of the right to sue others be taken to mean that full compensation has not been received by the injured party, and that he merely intended to agree with the released party not to pursue him further, but without releasing his cause of action against the other wrongdoers, or admitting that he has received full compensation for the injury? With reference to this question the authorities are not in accord. Some courts are disposed to hold, and have held, that when such an instrument contains apt words releasing one of the joint wrongdoers, it operates to release all, and that any clause inserted therein reserving a right to sue others after one has been released is repugnant to the release, in that it defeats or attempts to defeat, the natural legal effect of the instrument; and that it should therefore be ignored. McBride v. Scott et al. [132 Mich. 176] 93 N. W. 243, 61 L. R. A. 445 [102 Am. St. Rep. 416, 1 Ann. Cas. 61]; Abb v. Northern Pacific Ry. Co. [28 Wash. 428] 68 Pac. 954, 58 L. R. A. 293 [92 Am. St. Rep. 864], and cases there cited. Other courts hold, however, that such an instrument should be given effect according to the obvious intent of the person executing it, and that it should not be treated as a technical release operating to destroy his cause of action as against all of the joint tort-feasors, but rather as a covenant not to sue the party in whose favor the instrument runs. Gilbert v. Finch [173 N. Y. 455] 66 N. E. 133, 61 L. R. A. 807 [93 Am. St. Rep. 623]; Matthews v. Chicopee Mfg. Co., 26 N. Y. Super. Ct. 711, 712; Ellis v. Esson, 50 Wis. 138, 6 N. W. 518, 36 Am. Rep. 830; Hood v. Hayward, 124 N. Y. 1, 16, 26 N. E. 331; Sloan v. Herrick, 49 Vt. 327; McCrillis v. Hawes, 38 Me. 566; Miller v. Beck [108 Iowa, 575] 79 N. W. 344, 345; Price v. Barker, 4 El. & Bl. 760, 776, 777.

"We are of opinion that the doctrine enunciated in the cases last cited is supported by the greater weight of authority, and is founded upon the better reasons. It has the merit of giving effect to the intention of the party who executes such an instrument, which should always be done when the intention is manifest and it can be given effect without violating any rule of law, morals, or public policy. Besides, we are not aware of any sufficient reason which should preclude a person who has sustained an injury through the wrongful act of several persons from agreeing with one of the wrongdoers,

who desires to avoid litigation, to accept such sum by way of partial compensation for the injury as he may be willing to pay, and to discharge him from further liability without releasing his cause of action as against the other wrongdoers. The law favors compromises generally, and it is not perceived that an arrangement of the kind last mentioned should be regarded with disfavor. The release which was read in evidence in the case at bar plainly shows that the sum paid by Hysham was not accepted by the plaintiffs as full compensation for the injury which they had sustained; that it was not in fact full compensation for the injury; and that they had no intention of releasing their cause of action as against Carey. Why, then, should it be given an effect contrary to the intent of the one who executed it? We perceive no adequate reason for giving it such effect, and accordingly agree with the lower court that it did not release Carey."

In Mississippi, the Supreme Court of that state, in Bailey v. Delta Co., 86 Miss. 634, 38 South. 354, state their view of the law on this subject as follows:

"Under this state of facts, the partial satisfaction for the injuries received by the servant made by the master, not intended to be a settlement in full and not received as, nor in fact being, full compensation, cannot inure to the other person, whose concurrent negligence caused the injury complained of. We are not unmindful that in many jurisdictions it is held that any release of one tort-feasor operates to absolve all others from liability. We prefer, however, to adopt the reasoning of that other numerous line of decisions which hold that, in order for such release to have this legal effect, the satisfaction received by the party injured must be intended to be, and accepted as, full compensation for all injuries inflicted. This is more in accord with justice, and in better harmony with the principles of enlightened jurisprudence, which will not permit a party suffering a wrong to be deprived of his right to redress by any purely technical reasoning. We refer specially, as supporting this conclusion, to the strongly reasoned case of Louisville & E. M. Co. v. Barnes, 79 S. W. 261, 64 L. R. A. 574, 117 Ky. 860, 111 Am. St. Rep. 270 [273], where the whole subject is exhaustively discussed, and the true rule clearly and definitely set out."

While we concede that the authorities on this subject are not harmonious, yet we think the weight of authority, at all events the authorities which we are disposed to recognize as sound, treat a covenant not to sue, such as that given in this case, as a mere agreement to release the one joint tort-feasor by whom the settlement is made, and not as a release of the cause of action, leaving the other joint tort-feasors liable to the person injured. It is always understood, and in all these cases it is held, that the joint wrongdoer against whom the suit was brought, when such a settlement with another wrongdoer has been made as pleaded, is entitled, pro tanto, to the amount received in settlement by the plaintiff injured as a credit on any liability which may be found to exist against the one sued.

It will be perceived that the covenant not to sue contains the following language:

"This instrument not being executed in full settlement of our entire cause of action for the said accident and injuries, but being a mere quitclaim and covenant not to sue, so far as it may relate to any interest of the said receivers and railroad."

Stress is laid, in the argument here, on the use of the expression "quitclaim." We do not see that this term "quitclaim" amounts to any more than is elsewhere expressed in the paper—that it is an agree-

ment not to sue the railroad company or the receivers. They yield their rights of recovery for the wrong done simply as against the party making the payment. The term "quitclaim," of course, does not properly apply in such an instrument. It is usually and generally a conveyance of land without warranty, and can hardly be properly used elsewhere; but here it clearly does not affect the fact that the purpose of the instrument, and the intention of the parties, is simply to agree that they will not sue the railroad company or the receivers, with the express stipulation that they reserve their rights as against the Pullman Company. To give any other construction to this paper would do violence to the intention of the parties, and to what we think the clear purpose and intent of the instrument is.

[2] Another claim made here is that the effect of the second plea, admitted by the demurrer to be true, is an acknowledgment on the part of the plaintiffs that they had been paid in full of all damages sustained. The language of the plea which is invoked in this connection is this:

"Defendant further avers and charges that plaintiff did not suffer damage because of the matters and things charged in the declaration in this cause to the extent of $1,000, and that she had well and truly been fully paid for and on account of the alleged wrongs and injuries charged to have been suffered by her."

We think this made simply an issuable defense about which evidence will be heard by the jury, and it will be determined on the trial whether or not she has been injured as much or more than the $1,000 which she has received. If she has been paid in full for her injuries, it will be so found. If she has not, the $1,000 should be credited on any recovery she may have.

The judgment of the District Court is reversed, and the cause remanded, with instructions to proceed in accordance with what has been stated in this opinion.

Judgment reversed.