**Nina Scharfenstein, Administratrix of the Estate of Whitney C. Scharfenstein, Deceased, Appellee, v. Forest City Knitting Company and Security Building Company, Appellants.**

**Gen. No. 7,948.**

192

Opinion filed March 4, 1929.

Rehearing denied June 18, 1929.

LATHROP, LATHROP ·& BROWN and NORTH, LINSCOTT, GIBBONEY & NORTH, for appellants.

HALL & DUSHER, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action on the case was instituted by appellee against appellants in the circuit court of Winnebago county, to recover for the death of appellee's intestate, alleged to have been caused through the negligence of appellants.

The original declaration was filed April 2, 1927. On March 11, 1928, an amended declaration was filed to which appellants filed separate demurrers. Said demurrers being overruled, appellants severally filed pleas of the general issue, of the statute of limitations, of partial payment, pleas that if there was any right of action, it was in favor of the Illinois Central Railroad Company under the doctrine of subrogation, and pleas of release of the Illinois Central Railroad as a joint tort-feasor. Demurrers filed to the special pleas were sustained. A trial was had, resulting in a verdict and judgment in favor of appellee for $8,000. To reverse said judgment, this appeal is prosecuted.

Two switch tracks or leads run in a southwesterly direction from the west line of Francis Street in the City of Rockford. The southerly one serves appellant, Forest City Knitting Company's plant, lying south of it; the northerly track serves the Rockford Drilling Machine Company, whose building lies north of it.

Appellant Security Building Company was constructing a building and garage for the Forest City Knitting Company, and had employed Putney Brothers to make the excavation therefor. In making said excavation, certain of the dirt was placed between said switch tracks.

On the afternoon of December 16, 1925, a switch engine, the crew of which included appellee's intestate, was backing in a southwesterly direction, pulling two cars, on the track of the Rockford Drilling Machine Company. Appellee's intestate had thrown the switch which caused the engine to enter the track leading to the Rockford Drilling Machine Company's plant, and had given the signal to back up.

The engineer heard some one "hollow," and stopped the engine. When appellee's intestate was next seen, he was under the footboard of the engine. The footboard was bent back against the brake beam, which was across Scharfenstein's leg, but did not touch it. Howard Janes, the foreman of the appellant building company and Hilding Anderson, secretary and treasurer of said company, went to the place where the engine had stopped and tried to raise the footboard from Scharfenstein's body, breaking a piece of 2 x 6 timber in the attempt. The engine was then moved some 5 or 6 feet in order to extricate appellee's intestate. He was fatally injured, and died a few hours thereafter.

It is first contended by appellants that the original declaration did not state a cause of action, in that it attempted to recover under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 et seq., and that no recovery could be had against appellants under that act, as they were not common carriers; that the amended declaration, being filed more than one year after said injury, would be barred under the State statute of limitations, and that the court erred in sustaining demurrers to said pleas.

While the declaration set forth that appellee's intestate was engaged in interstate commerce, and alleged damages of $25,000, this would not render said declaration bad as against appellants under the State statute, if the facts averred set forth a cause of action.

even though stated defectively. The allegation as to the amount of damages is one of form, and, if not objected to on the trial, cannot be taken advantage of on appeal. *Grand Lodge A. O. U. W. of Illinois v. Bagley,* 164 Ill. 340–342. It may be amended after verdict. *Tomlinson v. Earnshaw,* 112 Ill. 311–313. See also *Beidler v. Sanitary Dist. of Chicago,* 211 Ill. 628–640.

The original declaration charged in substance that on December 16, 1925, while appellee's intestate, a switchman for the Illinois Central Railroad Company, was switching certain cars to be used in interstate commerce, and while he was in the exercise of due care for his own safety, the engine upon which he was riding struck certain dirt or refuse belonging to appellant knitting company, placed there by appellant building company without the knowledge of appellee's intestate, "and with the knowledge of the Forest City Knitting Company and under their direction, and that said dirt had become frozen and impact and covered with snow so as to be hidden from view by the said Whitney C. Scharfenstein, deceased," and that appellee's intestate was thrown under the locomotive, etc. . . . and sustained the injuries in question.

It is further urged that said original declaration does not allege a duty on the part of appellants to appellee's intestate, a neglect thereof with resulting injury, etc. It is only necessary that the pleader state facts from which the law will raise a duty, and its omission and resulting injury. When that is done, an allegation that the act was negligent is unnecessary. *Taylor v. Felsing,* 63 Ill. App. 624–628, affirmed in *Taylor v. Felsing,* 164 Ill. 331–335; *Miller v. S. S. Kresge Co.,* 306 Ill. 104–106. Appellants owed to appellee's intestate the duty not to place obstructions along the switch tracks of his employer so as to endanger his life while in the exercise of his duties as such switchman.

In suits for wrongful death, the "cause of action" is the wrongful act, neglect or default causing death, and not merely the death itself. *Mooney v. City of Chicago,* 239 Ill. 414–423; *Crane v. Chicago & W. I. R. Co.,* 233 Ill. 259–262. When a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the cause of action is the thing done or omitted to be done, which confers the right upon the other to sue. *Greene v. L. Fish Furniture Co.,* 272 Ill. 148–156; *Mooney v. City of Chicago, supra.* The original declaration stated a cause of action against appellants, although defectively.

The amended declaration, after alleging the placing of said dirt, etc., averred that appellee's intestate "was riding on the footboard of the engine which was backing; that the running board struck the refuse and dirt which appellants had negligently and carelessly dumped along and adjacent to said switch track, so that it was broken and bent . . . and said deceased was thrown from said running board or footboard upon said engine, down to and upon the ground," etc.

The cause of action, both in the original and amended declarations, was the alleged wrongful depositing of said dirt, along said tracks, with the resultant injury to appellee's intestate. The amended declaration did not state a new cause of action. See *Swift Co. v. Gaylord,* 229 Ill. 330–334. The statute of limitations does not apply to matters of mere pleading, and it should not be given that effect indirectly by holding that an imperfect statement of a cause of action is no statement of it. *North Chicago St. R. Co. v. Aufmann,* 221 Ill. 614–620.

It is next insisted that there can be no recovery against appellants, for the reason that said dirt was placed on said tracks by employees of Putney Brothers, who were claimed to be independent contractors.

While the men who did the work were employed and paid by Putney Brothers, all or certain of said dirt was placed by the express direction of appellants. Howard Janes, a foreman for appellant building company, testified that Mr. Hubbard, the secretary of appellant knitting company, on inquiry as to where to put the dirt from said excavation, said, " 'Put the dirt between the switch tracks.' I told the men to put the dirt between the switch tracks.'' This witness further testified that the Security Building Company was desirous of disposing of the dirt as inexpensively and close by as it could. ''That was the object in my talking with Mr. Hubbard.''

Hilding Anderson, the secretary and treasurer of appellant building company testified that the disposal of said dirt was left to Mr. Janes. He was then asked the following questions and made the following answers:

''Q. Well, that was within his (Mr. Janes') part of the work, the disposal of the dirt as he wished to or could?

''A. With the consent of the owners.

''Q. By that you mean you would not put it on any land there without the consent of the person who had charge of the land?

''A. Charge of the building,—owner of the building; I don't know who owned the land, but in charge of the building.

''Q. Did the Forest City Knitting Company have anything to do with that (disposal of the dirt)?

''A. Yes, they told us where they wanted it.''

With reference to the excavating of the dirt, this witness testified: ''I called Mr. Putney on the phone, that I wanted him over at that job to get that dirt out the next day.''

Adam K. Putney, witness for appellants, testified:

''The Security Building Company requested me to send a team and the man and the slip and the extra

man. I don't recall whether I saw them personally or whether they telephoned us. . . . I don't recall that they told me what they wanted them for. According to my records they worked one day and a half. I was not there. I told them that the Security people wanted a team to go down there, and they went.''

E. E. Snyder, an employee of Putney Brothers, testified on behalf of appellants that he assisted in said excavating. He further testified: ''We got our orders from some man from the Security people. . . . I put it down like they said.''

In determining whether or not a party is an independent contractor or an employee, ''The right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. (*Decatur Railway and Light Co. v. Industrial Board,* 276 Ill. 472.) The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. . . . An independent contractor is one who contracts to do a specific piece of work, furnishing his own assistance and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given him by the person for whom the work is done, without his being subject to the orders of the latter in respect to the details of the work. (*LaMay v. Industrial Com.,* 292 Ill. 76; *Meredosia Drainage District v. Industrial Com.,* 285 id. 68.) . . . The fact that payment is to be made by the piece or the job or the day or the hour does not necessarily control where the workman is subject to the control of the employer as an employee and not as a contractor. *Franklin Coal Co. v. Industrial Com.,* 296 Ill. 329; *Amalgamated Roofing Co. v. Travelers Ins. Co.,* 300 id. 487.'' *Nelson Bros. & Co. v. Industrial Commission,* 330 Ill. 27–29.

The testimony of Janes and Anderson is to the effect that while Putney Brothers' men did the excavating, the direction as to where the dirt was to be placed was left with Janes, and he placed it under the direction of appellant knitting company. In other words, the details of the work were under the direction of appellants. · Putney Brothers were not independent contractors. *Decatur Railway and Light Co. v. Industrial Board, supra,* 474.

It is next insisted that the court erred in giving appellee's instruction No. 6. It is contended that this instruction directs a verdict; that it omits the question of proximate cause and does not submit the defenses sought to be made by appellants.

If the facts stated in said instruction were affirmatively found to exist from the evidence, it would warrant a recovery. The finding of such facts would in effect determine that appellee's intestate was thrown from said engine instead of having slipped therefrom; that the proximate cause of his injury was the piling of said dirt along the tracks, and that said dirt was placed there with the knowledge and under the direction of appellants. The court did not err in giving this instruction. See *North Chicago St. R. Co. v. Aufmann,* 221 Ill. 614–621; *James S. Kirk & Co. v. Jajko,* 224 Ill. 338–343; *Devaney v. Otis Elevator Co.,* 251 Ill. 28–41.

It is next insisted that the court erred in giving appellee's eighth instruction, in that said instruction referred to appellee as the widow of said deceased. As the evidence disclosed that she was the sole next of kin, it was not error to give said instruction.

It is next insisted that the court erred in refusing appellants' ninth, twelfth, thirteenth, eighteenth and nineteenth instructions.

The ninth and twelfth instructions sought to direct the jury's attention to the duty which the Illinois Central Railroad Company owed to appellee's intestate,

to furnish him with a safe place to work. That question was not an issue in the case, and the court did not err in refusing to give these instructions. There was no evidence on which to base appellants' thirteenth instruction, and the court did not err in refusing the same. Appellants' eighteenth and nineteenth refused instructions, so far as they stated correct principles of law, were covered by other instructions given. Twenty-one instructions were given on behalf of appellants.

It is next contended by appellants that the court erred in sustaining a demurrer to the plea of payment by the Illinois Central Railroad Company, and in sustaining an objection to the offer in evidence of the instrument entered into between appellee and said railroad company at the time said payment was made.

Said instrument is as follows:

"For and in consideration of the sum of seventy-five hundred ($7500.00) dollars, received by me as administratrix of the estate of Whitney C. Scharfenstein and as widow and sole heir of said Whitney C. Scharfenstein, deceased, receipt of which is hereby acknowledged, I as such administratrix of said estate and as such widow and sole heir do hereby covenant and agree not to sue the Illinois Central Railroad Company nor any of its officers, servants or employees on account of any matter, cause or thing whatsoever and more especially on account of the death of the said Whitney C. Scharfenstein, deceased, resulting from injuries received while in the employ of said Illinois Central Railroad Company and working as switchman with switch engine 247 when he was thrown under same at Rockford, Illinois, on the 16th day of December, 1925.

"It is expressly understood and agreed that this instrument is not a release to the Illinois Central Railroad Company nor to any other person whosoever, but is simply a covenant not to sue the said Illinois

Central Railroad Company, its officers, servants or employees on account of the said death.''

The construction of said contract was for the court. *Traders' Mut. Life Ins. Co. v. Humphrey,* 109 Ill. App. 246; *Scarlett v. National Live Stock Ins. Co.,* 193 Ill. App. 488–491; *Devine v. Rosenbaum Bros.,* 192 Ill. App. 30–36. It is not a release of any right of action, against the Illinois Central Railroad Company, but is a covenant not to sue. *Chicago & A. R. Co. v. Averill,* 224 Ill. 516–521, 522. There were no extraneous facts set up in the plea which would permit of the introduction of evidence as to any intention of the parties different from the language of the instrument.

But, if it be conceded that said instrument amounted to a release of the Illinois Central, it would not operate as a release of appellants, for the Illinois Central and appellants were not joint tort-feasors. If appellee had a right of action against the Illinois Central, it was under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.,* for failure to furnish a safe place to work. Appellants, not being common carriers, could not be joined with the Illinois Central in an action based on said act. Appellants could only be liable under the State statute, where a recovery is limited to $10,000, suit for which must be brought within one year. An action under the Federal Employers' Liability Act may be brought within two years, and the amount recoverable is not limited. Contributory negligence is not a defense, but may be offered in mitigation of damages. Contributory negligence is a defense under the State statute.

''By the enactment of the Federal Employers' Liability act, Congress has occupied the field covering the employer's liability for injuries to employees in interstate transportation by rail and has thereby superseded all law of this State on that subject. (*Staley v. Illinois Central Railroad Co.,* 268 Ill. 356.)'' *Brundege v. Chicago. B. & Q. R. Co.,* 324 Ill. 74–76.

Counsel for appellants contend that, even though the instrument be construed as a covenant not to sue, it should have been admitted in evidence in reduction of damages, and cite in support thereof *Vandalia R. Co. v. Nordhaus,* 161 Ill. App. 110; *Garvey v. Chicago Rys. Co.,* 239 Ill. App. 669; *Wagner v. Chicago & A. R. Co.,* 265 Ill. 245; *Gore v. Henrotin,* 165 Ill. App. 222; *Berry v. Pullman Co.,* 249 Fed. 816.

An examination of the foregoing cases will disclose that they all involved the effect to be given to a release of a joint tort-feasor, and are not applicable here.

Under our holding that the instrument entered into between appellee and the Illinois Central Railroad Company, upon the payment to appellee of said sum of $7,500, was not a release, but was a covenant not to sue, and inasmuch as the Illinois Central and appellants were not joint tort-feasors, appellants were not entitled to the benefit of said payment in reduction of the damages that might be assessed against them. *City of Chicago v. Babcock,* 143 Ill. 358–366; *Devaney v. Otis Elevator Co., supra,* 38.

In the latter case, suit had been instituted by Devaney against the Otis Elevator Company. Thereafter, by amendment, the Standard Company and one E. T. Harris were joined as defendants. In consideration of $375, Devaney gave the Otis Elevator Company a covenant not to further prosecute suit against that company. The suit thereafter proceeded against the Standard Company and Harris. A trial was had, resulting in a verdict and judgment against the Standard Company and Harris for $2,000. The court, in discussing the question as to whether the Standard Company and Harris were entitled to a reduction of the damages against them in the sum of $375, at page 38 says:

"Plaintiff in error complains that the court erred in giving instruction No. 2 for defendant in error. This instruction, after stating the rule for estimating the

damages in case the defendant in error was entitled to recover, proceeds to inform the jury that from the amount of actual damages sustained should be deducted $375 paid by the Otis Elevator Company, provided the jury believe that the Otis Elevator Company was jointly guilty with the plaintiff in error of the negligence that caused the injury; and the jury were also informed that if the Otis Elevator Company was not guilty of negligence which approximately contributed to the injury, the $375 should not be deducted from the actual damages sustained by the defendant in error. This instruction had no proper place in this case and should not have been given. It improperly submits to the jury the issue as to whether the Otis Elevator Company was guilty of negligence in connection with the injury when no such issue was made in the pleadings. The Otis Elevator Company was not a party to this suit, and it was improper to submit the question of its responsibility for the injury to the jury by this instruction. The $375 paid the defendant in error by the Otis Elevator Company was not paid as part compensation for the injury he received. It was paid for a covenant not to further prosecute the suit against that company. The jury had nothing to do with that question and the instruction should not have been given. The $375 paid by the Otis Elevator Company could not be considered by the jury in part payment of defendant in error's damages.· . . . The rule in regard to joint tort feasors is that each wrongdoer is responsible for the whole amount of damages, and that there is no such thing as apportioning the damages among joint wrongdoers.''

If joint tort-feasors are not entitled to a reduction of damages by reason of an amount paid on a covenant not to sue as to one of the joint tort-feasors, certainly, in a case where a covenant not to sue has been entered into with a party who is not a joint tort-feasor, the amount paid by such party would not be admissible in

reduction of damages. The court therefore did not err in sustaining a demurrer to the plea setting up said defense, and in refusing to admit evidence as to such payment.

It is also insisted that the court erred in its rulings on the evidence. Appellants offered testimony to the effect that appellee's intestate had stated that he slipped from said engine. That testimony was denied by appellee's witnesses in rebuttal. One of them testified that he was the party who asked appellee's intestate as to how the injury occurred, and that he stated in effect that the engine struck the dirt and he was thrown from the engine. The court should not have permitted said testimony, over the objection of appellants, as such statement was self-serving. However, the undisputed testimony discloses that, without reference to whether appellee slipped or was thrown from said engine, his injury occurred by reason of his being caught between said frozen dirt and the footboard of said engine. The error in admitting said testimony would not warrant a reversal of said judgment.

It is also insisted that the evidence discloses that the injury which caused the death of appellee's intestate was the moving of said engine, and that therefore the Illinois Central was responsible for his death.

The record discloses that the parties who found appellee's intestate had endeavored to extricate him by trying to pry up said footboard, etc., but were unable to do so. Either by signal or on motion of the engineer himself, the engine was moved some 5 or 6 feet forward, and appellee's intestate was extricated. In view of the imperiled situation in which appellee's intestate was found, and the evident purpose of all concerned to assist him, it cannot be rightfully said that the moving of said engine was the negligent cause of his injury and death, especially in view of the fact that the wedging of appellee's intestate under said footboard was

206

occasioned by the dirt in question, placed there by authority of appellants. See *Kelly v. Chicago, R. I. & P. R. Co.*, 175 Ill. App. 196–203.

It is also insisted that the court erred in admitting the photographs offered in evidence by appellee, on the ground that the preliminary proof was not sufficient to show that the conditions were the same when the photographs were taken as at the time of said injury. Without going into a detailed discussion of the evidence in this connection, we are of the opinion that the court did not err in admitting said photographs. *Stevens v. Illinois Cent. R. Co.*, 306 Ill. 370–375,376; *Lake Erie & W. R. Co. v. Wilson*, 189 Ill. 89–96; *Moscarelli v. Sheldon*, 247 Ill. App. 352–355.

While other errors were assigned on the record, they were not argued, and are therefore taken as waived.

For the reasons above set forth, the judgment of the trial court will be affirmed.

*Judgment affirmed.*