## Vandalia Railroad Company, Appellant, v. J. W. Nordhaus, Administrator, Appellee.

1. ACCORD AND SATISFACTION—*effect of covenant not to sue.* A covenant not to sue one tort feasor or an agreement to dismiss one tort feasor out of the suit and thereafter not to sue him, is not the equivalent of a release which will discharge another tort feasor, but the amount paid for such covenant may be shown by such other tort feasor in reduction of damages.

2. CHANCERY—*when remedy at law precludes resort to.* If one tort feasor buys his peace by paying a sum of money in consideration of the giving to him of a covenant not to sue, the other tort feasor knowing of such transaction prior to the overruling of a motion for a new trial and failing to avail of such knowledge to obtain reduction of the damages awarded, by way of *remittitur* or otherwise, is precluded from resorting to a court of equity.

Bill in equity. Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 15, 1911. Rehearing denied May 16, 1911.

FORDYCE, HOLLIDAY & WHITE and TURNER and HOLDER, for appellant.

JAMES G. McHALE and D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

Appellant filed a bill in equity alleging that appellee, as administrator of the estate of Frank Zehak, deceased, had commenced an action at law against appellant and St. Louis National Stock Yards Company to recover damages for the death of Zehak occasioned by the alleged negligence of the defendants; that appellant and said Stock Yards Company appeared and pleaded to the declaration; that the cause came on for trial and all the parties to the cause introduced evidence and submitted arguments to the jury and the jury returned a verdict against appellant and said

Stock Yards Company for the sum of $1,500 damages; that thereafter on June 4, 1908, at the same term appellant and said Stock Yards Company filed separate motions for a new trial and that appellee dismissed his suit against the said Stock Yards Company on June 25, 1908, and the court afterwards denied appellant's motion for a new trial and rendered judgment against it for the amount of the verdict.

Appellant's bill further averred that on June 2, 1908, appellee received from the Stock Yards Company or from some one in its behalf on account of said judgment or for the damages caused by the negligence alleged in the declaration $750 and after the payment thereof there was a balance due of $750 with interest on said judgment. It was further alleged that appellant did not learn of said payment until after the judgment against it was affirmed by the Supreme Court; that it had tendered appellee the said sum of $750 and accrued interest, had paid all the costs and had requested him to satisfy the said judgment of $1,500 but he refused and still refused unless appellant would pay him $1,500 and accrued interest. It was further alleged when said sum of $750 was paid appellee by said Stock Yards Company and received by him, it was in reduction of the damages recovered and a satisfaction of the judgment to that extent. Appellant offered by the bill to pay the remainder of the judgment with interest and prayed that appellee be enjoined from collecting the judgment and the court would order it satisfied.

All the averments of the bill were admitted by the answer except it was denied that $750 was received on account of the judgment or in settlement of the damages caused by the negligence alleged in the declaration, or that the amount offered to be paid by appellant was the amount due, or that any payment was made in reduction of the damages recovered against appellant or that appellant was entitled to any relief.

The chancellor after a hearing entered a decree

denying the prayer for an injunction and dismissing the bill for want of equity.

It appeared from the testimony that appellee had brought an action against appellant and the Stock Yards Company charging them with negligence in causing the death of appellee's intestate. Each defendant interposed a plea and upon a trial of the issues by jury there was a verdict finding both defendants guilty and assessing the damages at the sum of $1,500. Each defendant moved for a new trial and pending the motion the Stock Yards Company paid appellee the sum of $750. At the time of the payment, an agreement in writing was entered into between appellee and the Stock Yards Company in which after reciting the proceedings in the cause and that a motion for a new trial was pending, the agreement set forth that in consideration of the payment of $750 by the Stock Yards Company appellee covenanted and agreed to dismiss the suit against the said Company and further covenanted and agreed not to sue or cause to be sued the said Company for the recovery of damages against it on account of the death of the intestate, and agreeing no action should be begun against the said Company by reason of any matters existing at that date; also that the agreement should not be held or construed to be a release of any damages, or any right of action arising to appellee as administrator by reason of any matters existing at that date.

Mr. Turner was one of the attorneys for appellant, associated with Mr. Fordyce. Mr. McGlynn represented the Stock Yards Company, and Mr. Sullivan the appellee in the trial of the suit for damages. Mr. Fordyce testified the appellant had no notice of the payment by the Stock Yards Company until after the case had been affirmed by the Supreme Court. Mr. Turner did not testify. Mr. Sullivan testified that while the motion for a new trial was pending he had a conversation with Mr. Turner in which he told him that if he, Turner, insisted on taking up the motion,

he, Sullivan, would see McGlynn who represented the Stock Yards Company and if McGlynn would pay him any reasonable amount he would dismiss the suit as to the Stock Yards Company and take a judgment against appellant for the entire amount; that Turner answered "If you do that I will get a new trial."

McGlynn testified he told Turner that if they could not settle the claim he was going to see what he could do with Sullivan about getting out of it, and if Sullivan would give him a release or an agreement not to sue for $750, he was going to take it.

There is no contribution among joint tort feasors. When there are several tort feasors, an injured party may sue any or all of them and may dismiss as to any of them and there can be no complaint by any of them that all guilty of the tort are not made parties.

A release to one of several joint tort feasors is a release to all and an accord and satisfaction with one of them is a bar to an action against the others. City of Chicago v. Babcock, 143 Ill. 358; West Chicago Street R. R. Co. v. Piper, 165 *id.* 325.

A covenant not to sue one of two or more tort feasors does not operate as a release of any of them and they cannot invoke the covenant as a bar to the action against them. City of Chicago v. Babcock, *supra;* C. & A. Ry. Co. v. Averill, 224 Ill. 516.

The agreement between appellee and the Stock Yards Company was not a release or an accord and satisfaction but a covenant not to sue, and while it was no bar to the action against the appellant and the Stock Yards Company, we think the payment of the Stock Yards Company might have been shown in reduction of damages. Appellee ought not to be permitted to take from one alleged tort feasor a sum of money for damages and recover the full limit from the other.

But it is a maxim that "Equity aids the vigilant" and if appellant had an adequate remedy at law and

by a lack of vigilance failed to pursue it, we cannot invoke the aid of a court of equity.

We cannot escape the conclusion from the testimony of Sullivan and McGlynn of their conversations with Turner which are not denied by him, and the subsequent dismissal of the suit as to the Stock Yards Company, that this was amply sufficient to put a prudent man upon inquiry while the motion for a new trial was pending whether the Stock Yards Company had paid appellee $750 "to get out of it" as McGlynn had told Turner he intended to do. It is the rule concerning notice that if it appears a party had knowledge or information of facts sufficient to put a prudent man upon inquiry and he wholly neglects to make any inquiry the inference of actual notice is necessary and absolute.

We know of no remedy which could be furnished by a court of equity in a case like this where a party was not charged with notice of the payment, except to open the judgment, grant a new trial and permit the party to show such payment in reduction of damages. This remedy was adequate at law upon the motion for a new trial where the court could have compelled a *remittitur* or granted a new trial in which the payment of the Stock Yards Company could have been shown to reduce the damages. The evidence of the payment was at hand and obtainable and appellant had sufficient constructive notice to require it to avail itself of the testimony.

Finding no error the decree of the Circuit Court will be affirmed.

*Affirmed.*