DOMINIC VILLAPIANO *et al.,* Plaintiffs-Appellants, *v.* BETTER BRANDS OF ILLINOIS, INC. *et al.,* Defendants-Appellees.

(No. 58740;

First District (3rd Division)—February 6, 1975.

Paulson & Ketchum, of Chicago (James R. Madler, of counsel), for appellants.

Shulman, Spivack and Cohen, of Chicago (Norman E. Goldman, of counsel), for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

A truck driven by Dominic Villapiano collided with one driven by John Brandon. Villapiano was employed by Illini Reefer Transit, Inc., and Brandon by Better Brands of Illinois. Better Brands was delivering Miller High Life beer in a truck rented from the Hertz Corporation. Within a month after the accident, Villapiano, in return for $1,500, executed a full release to Brandon, Better Brands, Miller and Hertz for the injuries he received in the collision.

Reefer was not informed of the release. It had paid Villapiano workmen's compensation benefits and, upon learning of the release, sued to set the release aside. Villapiano and Reefer's compensation carrier, the Farmers Insurance Group, joined in the action. After the defendants (including National Illinois Claim Service which had been instrumental in securing the release while investigating the accident for the defendants) had answered, the chancery division of the circuit court ruled that the release bound Villapiano but not Reefer and Farmers. The case was then transferred to the law division.

Before the cause came to trial the property damage claims were settled. There remained only that portion of the complaint which pertained to Reefer's and Farmers' request that they be reimbursed for compensation payments made or payable to Villapiano. The defendants moved to dismiss this issue. Their motion stated that they were unaware at the time they obtained the release from Villapiano that he had been

paid pursuant to the Workmen's Compensation Act and that they first received notice of this fact 2 weeks after the release was executed. The motion was granted, the complaint was dismissed and Farmers appealed.

The appeal raises the issue whether an employer who pays workmen's compensation to an employee for injuries caused by a third party loses his statutory right to indemnity if the employee, without the employer's knowledge or approval, releases his claim against the third party before the latter receives formal notification of the employer's interest. Before supplying this answer it is first necessary to understand both the nature and extent of an employer's rights to reimbursement from the third-party tort-feasors under the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138) and the relationship of those rights to the avenues of action open to injured employees.

■■ The Workmen's Compensation Act was intended to supplant common-law rules of master-servant liability, by which employees injured in the course of their employment bore a disproportionate share of their losses. However, to mitigate the rigors of the substituted system of liability, which imposed liability without fault upon employers for the benefit of their employees, the Act in section 5(b) (Ill. Rev. Stat. 1967, ch. 48, par. 138.5(b)) provides a recourse for employers who are compelled to pay compensation to employees injured by third-party tort-feasors. See *Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 106 N.E.2d 124; *Baker & Conrad, Inc. v. Chicago Heights Construction Co.* (1936), 364 Ill. 386, 4 N.E.2d 953.

While intended to protect employers, section 5(b) also safeguards the rights of employees. An earlier section of the Act (section 29, Ill. Rev. Stat. 1947, ch. 48, par. 166), which limited the employee's common-law remedy against the tort-feasor, did not pass constitutional muster. (*Grasse v. Dealer's Transport Co.*) As presently drawn, it imposes no such restraint, reserving to an injured employee first choice in the manner of proceeding. When an injury compensable under the Act is caused by someone other than the employer the injured employee may elect either to proceed against the actual tort-feasor or to enter a compensation claim. But if, while claiming compensation, he also elects to file a negligence action, he must notify his employer. It then devolves upon the employer or his compensation carrier in his place to intervene and join the employee's action; if he does, all subsequent orders of the court "shall be made for his protection." Alternatively, the employer "may have or claim a lien" upon any judgment or settlement fund. In either case it is the employee who controls the litigation.

If, on the other hand, the employee forsakes his tort remedy and decides only to enter a claim for workmen's compensation, the innocent

employer is empowered by section 5(b), during the 3 months immediately preceding expiration of the period of limitations, to file the negligence action in his own name or that of the employee, and in that way have questions of liability and damages adjudicated. Out of any recovery, the excess above the employer's indemnity for compensation payments and litigation costs must be paid over to the employee.

Because of the close association between the remedies of the injured employee and those of his employer, section 5(d) contains an important proviso:

> "No release or settlement of claim for damages by reason of such injury * * * shall be valid without the written consent of both employer and employee * * * except * * * where said employer has been fully indemnified or protected by Court order."
> (Ill. Rev. Stat. 1967, ch. 48, par. 138.5(b).)

Relying on a similar proviso in an Oklahoma statute, the Supreme Court of that state held a settlement violating the requirement to be void and binding on no one. (*Sinclair Oil & Gas Co. v. State Industrial Com.* (1931), 151 Okl. 228, 3 P.2d 438.) The court reasoned that the requirement of an employer's consent was a restriction on the right of the employee to contract relative to his claim. The holding is also consistent with a statutory purpose, discerned by some courts, to "protect the employee against his own improvidence, weakness, ignorance, or shortsightedness in compromising his claim for injuries." *Woodward v. E. W. Conklin & Son* (1916), 171 App.Div. 736, 157 N.Y.S. 948.

■■ Courts are in general agreement that even where the workmen's compensation statute is silent as to the right of an employee to settle, his execution of a release or settlement cannot interfere with the right of an employer or its compensation carrier to proceed against the third-party tort-feasor the same as if such settlement had not been made. (See the cases collected in *Lang v. William Bros Boiler & Manufacturing Co.* (1957), 250 Minn. 521, 85 N.W.2d 412.) By signing a release, the employee surrenders at most his personal claim to a share in any recovery. But the negligence claim survives in his employer, subject to the limitation that his damages may not exceed his compensation liability. As stated in *Hugh Murphy Construction Co. v. Serck* (1920), 104 Neb. 398, 401, 177 N.W. 747, 748:

> "The wrongdoer must take notice of the rights of all, and cannot by a settlement with the injured party increase the burden of the innocent employer. The parties concerned are equal in the eye of the law, and the courts will not suffer one to profit at the expense of either of the others."

The gist of the defendants' contention is that neither Illini Reefer nor

the Farmers Insurance Group can ask indemnity of them, because they were not notified of Villapiano's compensation claim prior to entering their settlement with him. Some jurisdictions hold that an employer may forego his claim for indemnity by his laches of the third-party tort-feasor settles in good faith with the employee without notice or reason to know the employer's right. (*Smith v. Yellow Cab Co.* (1927), 288 Pa. 85, 135 A. 858.) Other authority is more strict, charging third-party tort-feasors who enter settlements with constructive notice of the employer's interest, the notice arising from a presumption of awareness of the statute's protective provisions.

> "When a third party takes a release or settles a claim he does so with full knowledge of this statutory requirement that the compromise shall have the written approval of the person or corporation liable for compensation under the act, and that without such approval such release or compromise may not be asserted against the person or party whose approval is thus required." *Woodward v. E. W. Conklin & Son* (1916), 171 App.Div. 736, 739, 157 N.Y.S. 948, 950. See also *Lang v. William Bros. Boiler Manufacturing Co.;* 2 Larson, Workmen's Compensation Law § 74.17 (1975).

■■ In the case at bar the defendants had, at least, constructive notice of the employer's interest. Indeed, the plaintiff's complaint went further. It charged in Count II that the defendants' negotiating agent, the National Illinois Claim Service, was fully aware of the fact that Villapiano was receiving workmen's compensation payments. While the defendants denied this, they admitted in their answer that they knew the vehicle operated by Villapiano was the property of Illini Reefer. Thus, they had sufficient information to put them on inquiry as to Villapiano's status. If it appears a party having knowledge or information of facts sufficient to put a prudent man upon inquiry wholly neglects to make any inquiry, the inference of actual notice is necessary and absolute. (*Vandalia R. R. Co. v. Nordhaus* (1911), 161 Ill.App. 110.) Moreover, the release was obtained by their agent, a claim service whose business it was to investigate personal injury claims. The fact that Villapiano was driving the truck of his employer when the accident occurred should have alerted this professional organization to the potential interest of Reefer. Finally, even if we did agree that the defendants could not be charged with notice of the employer's interest when they obtained the release, the outcome would not be different. Neither Illini Reefer nor the Farmers Insurance Group by act or omission waived its statutory right to indemnity. Reefer served notice of its claim on the Hertz Corporation no later than 6 weeks after the accident. This short delay cannot be con-

strued as laches. By its written notice, Reefer preserved its right to pursue a claim for indemnity under section 5(b).

Our decision should not, as the defendants fear, undermine the speedy settlement of claims, within the bounds of judiciousness. To hold otherwise would convert post-accident negotiations into an unseemly race, the only result of which, if not the goal, would be inequity.

The parties have in their briefs and argument fastened on the section 5(b) word "lien," treating it as akin to an equitable lien and as an exclusive remedy. The plaintiffs contended that the employer's lien vests at the time of his employee's injury, is established when he serves notice to the third-party tort-feasor and, once notice is provided, relates back to the time of vestment. The defendants rejoined that no lien arises until the employer provides notice to the third-party tort-feasor. It is a measure of the dearth of authority on the subject and of the statute's ambiguity that both parties chose to support their opposing interpretations with the same case, *Employer's Mutual Casualty Co. v. Trimon Elevator Co.* (1966), 71 Ill.App.2d 124, 217 N.E.2d 391.

■■■ Although the *Trimon* court observed that "[t]he lien of an employer who has paid compensation to an employee comes into effect at the time the employer gives notice to the third party tort-feasor," this was dictum, and its opinion as a whole is not inconsistent with our construction of the statute. Stating that an employer's section 5(b) right to join in a suit filed by his employee is not exclusive, the court permitted an employer to pursue a separate action to recover his compensation liability since he had not been protected in the settlement of the employee's action against the third party. That the amount of the settlement in *Trimon* had been paid to the employee more than a year prior to the employer's action, that as a practical matter there remained no *res* or particular fund upon which to impress a lien, that the settlement had exceeded substantially the amount of indemnification sought, were not deemed to foreclose the employer's right to sue for indemnity and to name the third-party tort-feasor as a defendant. This liberal interpretation of section 5(b) reinforces our view that the right granted employers by that section is paramount to the alternative remedies available for enforcement. When Illini Reefer and Farmers Insurance Group brought this action jointly with Villapiano, the object was to set aside the release entirely, so that Villapiano could pursue his common-law action against the defendants and so that Reefer and Farmers could then impress their lien on the proceeds of Villapiano's suit. However, when it was found that Villapiano could not maintain his suit, the right to an adjudication on issues of liability and damages passed to his employer and its insur-

ance carrier, whose position changed from intervenors or lienors to that of transferees of the common-law action, much as if Villapiano had allowed the statute of limitations to run within 90 days of expiration. The difference, of course, is that Villapiano can claim no benefits if the action of the remaining plaintiffs is successful; their recovery may not exceed his employer's liability for compensation payments under the Act.

The judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

McGLOON, P. J., and MEJDA, J., concur.